Curtis Lee MAYES, Petitioner-Appellant, Cross-Appellee,

v.

Dewey SOWDERS, Warden, Respondent-Appellee, Cross-Appellant.

Nos. 79–3709, 79–3710.

United States Court of Appeals, Sixth Circuit.

Argued April 14, 1980.

Decided June 3, 1980.

Frank W. Heft, Jr., Chief App. Defender of the Jefferson Dist. Public Defender, Louisville, Ky., for petitioner-appellant, cross-appellee.

Robert Stephens, Atty. Gen., Frankfort, Ky., for respondent-appellee, cross-appellant.

Before WEICK, Circuit Judge, and PHILLIPS and PECK, Senior Circuit Judges.

WEICK, Circuit Judge.

The Commonwealth of Kentucky has appealed from an order of the District Court granting a writ of habeas corpus to the petitioner, Curtis Lee Mayes, with respect to two murder convictions in its courts. The petitioner has appealed from the denial to him of a writ of habeas corpus by the same District Court with respect to two robbery convictions which were involved in the murders.

Curtis Lee Mayes was convicted by a jury in the Jefferson County, Kentucky, Circuit Court, Criminal Division on two counts of

murder and two counts of robbery. The jury imposed consecutive sentences of life for the two murders, 12½ years for the first robbery conviction, and 20 years for the second robbery count. Judgment thereon was entered by the trial judge.[1] The petitioner appealed his convictions to the Supreme Court of Kentucky raising several issues including the Confrontation Clause issue which is presently before this court. The Supreme Court of Kentucky affirmed the petitioner's convictions in *Mayes v. Commonwealth*, 563 S.W.2d 4 (Ky.1978). An application for a writ of habeas corpus was subsequently filed in the United States District Court for the Western District of Kentucky alleging that the introduction of hearsay evidence at the petitioner's trial violated his rights under the Confrontation Clause of the United States Constitution. The District Judge granted the writ of habeas corpus as to the two murder convictions but denied the writ with respect to the robbery convictions. We agree with the District Court that the petitioner's constitutional rights were violated and that the writ of habeas corpus should be issued on the first murder conviction which arose out of the robbery of the Standard Gasoline Service Station. We hold that the error was harmless beyond a reasonable doubt with respect to the second murder conviction arising out of the jewelry store robbery and the two robbery convictions because of petitioner's confessions and other overwhelming evidence.

## I

On August 1, 1976, at between 1:00 a. m. and 4:00 a. m., Duncan's Standard Service Station was robbed of $147.62. The gasoline service station attendant, Charles Ferguson, was found shot to death in the restroom of the service station. Death was caused by two bullet wounds to the head. Eight days later, on August 9, 1976, Hannah Jewelers store was robbed of approximately $5600 of jewelry. Shortly after the robbery, Mrs. Grace Noble, a 51-year-old part-time employee who was temporarily in charge of the store, was found stabbed to death in a bathroom off of a back room in the jewelry store. Mrs. Noble had been stabbed 13 times, at least two of the blows being potentially fatal.

Acting on an informer's tip, Sergeant Spellman of the Jefferson County Police Department, picked up Curtis Mayes for questioning. Mayes confessed to his participation in the two robberies along with his cousin, Leslie Beecham, but denied doing the actual shooting or stabbing. Mayes cooperated with the police by leading them to a sewer where the police found a hunting knife with traces of blood on it in a bag with tags which had been removed from the stolen jewelry. The knife fit perfectly into a sheath which was found under Mrs. Noble's right foot. Mayes also identified himself and Leslie Beecham as the two men shown (from shoulders to feet) in a picture taken by a hidden camera in the jewelry store. Mayes and several police officers went to a house where Mayes and Beecham lived with several other relatives. Mayes spoke with his mother and retrieved for the officers the clothing which he and Beecham had worn during the jewelry store robbery.

---

1. While this appeal was pending, the Supreme Court decided *Whalen v. United States*, —— U.S. ——, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), holding that consecutive sentences for felony-murder and the underlying felony, under District of Columbia law, amounted to multiple punishment for the same offense in violation of the defendant's rights under the Fifth Amendment's Double Jeopardy Clause. The question presented by the *Whalen* case in the context of this case is whether the Kentucky legislature intended for the felony to be punished only as a lesser-included offense of felony-murder or as two separate offenses. As discussed in greater detail below, Kentucky has substantially deviated from the traditional felony murder rule and therefore the Kentucky statutory scheme is markedly different from the District of Columbia law which the Supreme Court considered in *Whalen*. Nevertheless, we note that the commission of the robberies in this case was charged by the Court as an element of the offense of murder. Since the Kentucky courts have not yet been given an opportunity to rule on this issue which is essentially a matter of construction of state statutes and since this issue was not raised in this appeal, we express no opinion on the applicability of *Whalen* to this case.

Beecham's shirt had traces of human blood on it while Mayes' clothing did not.

Beecham, who was five years older than Mayes, was subsequently picked up by the police. Beecham also admitted committing the robberies, but claimed that Mayes had done the killings. After the indictment in the Circuit Court charging Mayes and Beecham as co-defendants had been read to the jury, Beecham agreed to and did enter a plea of guilty to both the robberies and the murders in return for the dismissal of some unrelated charges pending against him and a recommendation of the prosecutor of a 90 year fixed sentence. Beecham's attorney also informed Beecham that he would not have to testify against Mayes. At the time the guilty plea was entered, Beecham denied that he had killed anyone but indicated that he was pleading guilty on the murder counts in accordance with *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Beecham's sentencing was deferred until after Mayes' trial.

At trial, the prosecution called Beecham as a witness. Beecham gave his name and address, answered two questions put to him by the prosecutor in the negative, and thereafter refused to testify further despite a conference in the Judge's chambers and ultimately a contempt citation by the Court.[2] The State concedes that Beecham neither admitted nor denied making any statements to any police officers. One of the questions which Beecham did answer was:

> Q. (By the prosecutor): Mr. Beecham I would like to direct your attention back to the early morning of August 1st of 1976: Were you present between the hours of 1:00 in the morning and 4:00 in the morning at the Duncan Standard Service Station?
>
> A. (By Beecham): No, I wasn't.

After Beecham left the stand, the prosecutor was permitted, over the objections of defense counsel, to recall Sergeant Spellman to the stand to testify as to a "prior inconsistent statement" of Beecham. Sergeant Spellman testified that Beecham had told him: "I was with him at the Duncan Standard Service Station but he, meaning defendant, Curtis Mayes, did the killing." Not only does this statement go far beyond the bounds of a "prior inconsistent statement," but, as the State conceded at oral argument before this Court, this statement was the only evidence that Mayes rather than Beecham had actually killed anyone.

In affirming the convictions, the Supreme Court of Kentucky did not rely on the trial court's prior inconsistent statement theory, instead it found that the statement was admissible as substantive evidence under its holding in *Jett v. Commonwealth*, 436 S.W.2d 788 (Ky.1969). The *Jett* case held:

> The result is that an out-of-court statement made by any person who appears as a witness, which statement is material and relevant to the issues of the case, may be received as substantive evidence through the testimony of another witness, and need not be limited to impeachment purposes. CR 43.07 therefore does not apply, though we are of the further opinion that the same type of foundation must be laid as required by CR 43.08 in order that the witness whose testimony is to be contradicted, supplemented, or otherwise affected by the out-of-court state-

---

2. After it became obvious that Beecham was not going to testify any further, the prosecutor continued to ask several questions over the defendant's objections, including such questions as: "Mr. Beecham, did you tell the police officers that you were with Curtis Mayes on August 9th at the Hannah Jewelry Store?" and "Didn't you tell the officers that you and Curtis Mayes were in the jewelry store and that Curtis pulled a nickel-plated revolver out of his belt and turned it on the woman and robbed her?" This kind of questioning by a prosecutor of a witness who is refusing to testify was held to

be a violation of the right of confrontation in *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). *See also, United States v. Mayes*, 512 F.2d 637, 648–50 (6th Cir.), *cert. den.*, 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). However, a cautionary instruction was subsequently given by the trial court admonishing the jury not to consider the questions as evidence. The questions were primarily directed to Mayes' admitted participation in the robberies. Thus we find the error to be harmless beyond a reasonable doubt.

ment may have a proper and timely opportunity to give his version or explanation of it. The same rule shall apply regardless of whether the witness whose out-of-court statement is to be proved appears as a witness for the party who intends to prove it, or as a witness for the adversary party. (*Jett, supra,* 436 S.W.2d at 792).

The *Jett* rule as stated above presents no Confrontation Clause issues since it clearly contemplates that the declarant of the hearsay statement will testify at trial and be subject to full and effective cross-examination about the statement and its contents. *See, California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

The Supreme Court of Kentucky found that the petitioner had had a full and effective opportunity for cross-examination of Beecham. The District Court strongly disagreed, holding:

In the instant case, Beecham, by his own conduct, made it impossible to inquire as to whether or not the statement which he had allegedly made to Officer Spellman was, in fact, made by him, and further, made it possible for trial counsel for petitioner to examine him concerning the accuracy of the statements made to the officer.

The respondent contends that petitioner was given the opportunity to cross-examine Beecham. That opportunity could be of little comfort to him where the reality was that Beecham had taken the position that he would not answer any further questions concerning the alleged crime. As the Supreme Court pointed out in *Douglas, supra,* effective confrontation of a witness is possible only if he affirms the statement was his own.

\* \* \* \* \* \*

The Court holds that the inability of petitioner to effectively cross-examine Beecham arises from the unusual sequence of events which occurred at the trial. First, we have Beecham making two exculpatory statements. Then we have him refusing to answer any other questions propounded to him by the prosecution. We

then find the trial judge making a valiant effort to coerce Beecham to testify, which failed. We also find the trial judge tendering to petitioner the right to cross-examine Beecham. The problem with this procedure is two-fold as noted above. First Beecham had made no statements which petitioner, on cross-examination, would wish to dispute. Second, Beecham had not admitted or denied making any statement to Spellman and, therefore, there was no occasion to cross-examine him concerning the matter.

In addition to Beecham's refusal to testify (and because of it) the ability of defense counsel to cross-examine Beecham was limited by several rulings by the trial judge. The Court originally ruled that "(i)f he refused to testify for the Commonwealth the Court is not going to let him answer for anybody else." Subsequently, at a conference in chambers, the Court modified its earlier ruling indicating that the defendant could question the witness, but his cross-examination would be limited to the scope of the answers which Beecham had given on direct. Defense counsel asked the Court to permit him to ask Beecham if he had plead guilty to the two robberies and murders. The Court indicated that it would allow the question, but that if Beecham answered the question, then the Court would allow the prosecution to introduce the entire transcript of that proceeding before the jury. Counsel for Mayes told the Court that he had been excluded from that proceeding and that, not knowing what he would be opening the door to, he would not ask the question. Under these circumstances defense counsel indicated that there would be no cross-examination of the witness. We do not mean to intimate that the trial court acted improperly in limiting the scope of cross-examination under these facts. However, once the scope of cross-examination had been so limited, Beecham could not be considered to be available for the kind of full and effective cross-examination which would allow the prosecution to introduce his out-of-court statements. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347

(1974); *Smith v. Illinois*, 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *United States v. Callahan*, 551 F.2d 733 (6th Cir. 1977); *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976).

Several Supreme Court cases have outlined the scope of the right of confrontation. The Supreme Court in *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), said:

> The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." (Emphasis in original. 5 Wigmore, Evidence § 1395, at 123 (3d ed. 1940).)

> Cross examination is the principal means by which the believability of a witness and the truth of his testimony are tested.

Justice Rehnquist in *Parker v. Randolph*, 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713 (1979), wrote:

> The right of confrontation conferred by the Sixth Amendment is a safeguard to ensure the fairness and accuracy of criminal trials.

In *California v. Green*, 399 U.S. 149, 157–58, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970), the Supreme Court held:

> Our own decisions seem to have recognized at an early date that it is this literal right to "confront" the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause:

> > "The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness,

in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

Viewed historically, then, there is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.

This conclusion is supported by comparing the purposes of confrontation with the alleged dangers in admitting an out-of-court statement. Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the "greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

The Court went on to hold that under some circumstances the value of demeanor evidence could be sacrificed where the declarant is not available at the time of trial, but where he was subjected to a prior full and effective cross-examination under oath (e. g. at a preliminary hearing). Other cases have held that evidence can be admitted without cross-examination under oath only where there are other strong indices of reliability surrounding the evidence.[3]

---

**3.** *See, Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). This Court has held, for example, that the use of business records properly admitted within the hearsay exception does not violate the defendant's right of confrontation. *Meeks v. Jago*, 548 F.2d 134

 A witness is not available for full and effective cross-examination when he or she refuses to testify. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). This is equally true whether the refusal to testify is predicated on privilege or is punishable as contempt, so long as the refusal to testify is not procured by the defendant. *Douglas v. Alabama, supra,* 380 U.S. at 420, 85 S.Ct. at 1077; *Motes v. United States,* 178 U.S. 458, 471, 20 S.Ct. 993, 998, 44 L.Ed. 1150 (1900); *United States v. Mayes,* 512 F.2d 637, 650–52 (6th Cir.), *cert. den.* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975).[4]

Nor do we find any special indicia of reliability surrounding Beecham's out-of-court statement which would justify an exception to the requirement of full and effective cross-examination in this case. Beecham's statement that Mayes killed the gas station attendant was not corroborated by Mayes' own confession,[5] or any other evidence in the case. The oral statement was made during a custodial interrogation of Beecham, after Beecham had been shown Mayes' statement that Beecham had been the guilty party. The statement was self-serving. Finally, although Beecham denied guilt on the murder charges, he did plead guilty on those counts. We cannot find, under these circumstances, that the statement had any special, inherent reliability. *See, United States v. Bailey,* 581 F.2d 341, 350–51 (3rd Cir. 1978). The introduction of Beecham's out-of-court statement therefore was a violation of the petitioner's right of confrontation.

## II

 Having found constitutional error, we must next assess "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" or whether the error can be declared to be "harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We conclude that the District Court correctly determined that the error was harmless with respect to the robbery convictions. Mayes had confessed to the robberies. This fact would alone be sufficient to find the error harmless under *Parker v. Randolph, supra.* There was also several pieces of physical evidence linking the petitioner to the two robberies. Even Mayes' trial testimony did not deny his presence at and participation in the robberies.

 There is also overwhelming evidence (including the petitioner's own testimony) that the murders arose out of the robberies. The only hotly contested point was who actually did the killing. Thus under traditional felony-murder rules where proof of a felony and causation would support a conviction we would find that the admission of the statement was harmless. However, Kentucky law deviates from the traditional felony-murder rule. The prosecutor's burden of proof in a felony-murder context under Kentucky law is outlined in the official commentary to the new Kentucky Penal Code (effective January 1, 1975):[6]

Felony murder, as a separate category of homicide, has been used in Kentucky for many years to impose criminal liability. This offense has typically been used to convict a defendant who accidentally kills another while committing a dangerous felony or who participates in the commission of a felony which results in an intentional act of killing by a participant other than the defendant. The theoretical basis of this offense, stated many

---

(6th Cir. 1976), *cert. den.,* 434 U.S. 844, 98 S.Ct. 145, 54 L.Ed.2d 109 (1977).

**4.** The District Court found that although there was a close relationship between Mayes and Beecham, "there is no suggestion that Beecham's refusal to answer was procured by the petitioner."

**5.** This fact distinguishes this case from *Parker v. Randolph, supra,* cited by the State of Kentucky.

**6.** K.R.S. 500.100 provides: "The commentary accompanying this Code may be used as an aid in construing the provisions of this Code."

times over, is that "the turpitude of the act contemplated is by implication of law transferred to the homicide which actually is committed so as to make the latter offense a killing with malice, contrary to the real fact of the case as it appears in evidence." *Tarrence v. Commonwealth,* 265 S.W.2d 40, 50–51 (Ky.1953), citing 26 Am.Jur., Homicide, §§ 188, 309.

*KRS 507.020 does not preclude the type of conduct described above from constituting murder. It does, however, abandon the doctrine of felony murder as an independent basis for establishing an offense of homicide.* Under the section, deaths occurring in the course of other felonies must be judged under the "intentional" and "wantonness with extreme indifference" provisions of KRS 507.020(1)(a) and (b) and the "wantonness" provision of KRS 507.040. *Thus, if a defendant intentionally commits an act of killing during a felony his guilt is to be determined under KRS 507.020(1)(a). If a felony participant other than the defendant commits an act of killing, and if a jury should determine from all the circumstances surrounding the felony that the defendant's participation in that felony constituted wantonness manifesting extreme indifference to human life, he is guilty of murder under KRS 507.020(1)(b).* On the other hand, if the jury should determine that his participation constituted wantonness not manifesting extreme indifference to human life, he is guilty only of manslaughter in the second degree, KRS 507.040. (emphasis added)

The jury verdict is unclear whether the jury convicted the petitioner of actual murder under KRS 507.020(1)(a) or of participation in a felony which, under all of the circumstances, constituted "wantonness manifesting extreme indifference to human life" under KRS 507.020(1)(b). The only evidence that Mayes did the actual killing was the improperly admitted statement. Nor was the evidence of wantonness strong. Mayes' account of the robbery was the only evidence of the scope of his participation. He testified that he and Beecham had been driving around in Mayes's car and that they had stopped at Duncan's Standard Service Station for gas and oil. Mayes had no money so he told Beecham, to pay the attendant. When the attendant opened the cash register, according to Mayes, Beecham pulled a gun and took the money. Afterwards, Beecham took the attendant in the back and shot him. Mayes admitted getting $20 of the robbery money, but he claimed to have no prior knowledge that Beecham was going to commit the robbery or the murder. While the jury was free to believe or disbelieve this testimony, the only evidence which rebutted this testimony was Beecham's statement to Officer Spellman. We cannot find that the error was harmless beyond a reasonable doubt as to this murder conviction in the service station robbery.

■ The jewelry store murder conviction stands on a much different footing. Beecham's out-of-court statement was carefully edited so that it did not refer to the jewelry store robbery or murder at all. The most that the petitioner can claim is that the jury inferred that since Beecham had said Mayes had committed the gas station murder, that Mayes also committed the jewelry store murder. Whatever weight this inference might have under other circumstances, its weight would be substantially less where the second murder was committed with a different murder weapon. Furthermore, the evidence that the appellant's participation in the jewelry store robbery evinced "wantonness manifesting extreme indifference to human life" is much stronger. The prosecutor stressed in his closing argument that Mayes had admitted by his own testimony that he participated in the second robbery knowing that Beecham had killed the gas station attendant after the first robbery. Mayes also admitted participating in the purchase of the murder weapon and he knew right where the murder weapon was hidden after the robbery. Mayes testified that he never left the front room of the store, however, this testimony was rebutted by the testimony of Joyce DeWitt who testified that she entered the store about the time of the robbery and saw no one in the

front room. She said that she had called out for assistance and Mrs. Noble (the victim) had answered from the back room "I can't come out right now." Sensing that something might be wrong, Mrs. DeWitt left the store. A few minutes later the robbery and murder of Mrs. Noble was discovered. There was strong evidence based on his own testimony that Mayes' participation at least manifested wantonness sufficient to find him guilty of the murder irrespective of who actually stabbed the woman. The possible prejudicial inference is weak and was not drawn for the jury in the State's closing argument. We conclude that any possible inference which the jury might have drawn from the improperly admitted statement was harmless beyond a reasonable doubt with respect to the jewelry store murder.

### III

■ Finally the petitioner contends that the improperly admitted statement might have induced the jury to impose a harsher sentence on all of the counts.[7] Many of the same factors come into play here as were discussed in the harmless error analysis above. The error could have affected the jury's sentence on the gasoline station murder conviction; however, we have already determined that conviction to be invalid. We are reluctant to assume that the jury was so influenced, especially where the evidence on the other counts could properly justify the imposition of harsh sentences. The offense most closely related to the invalid gasoline station murder conviction was the gasoline station robbery conviction where the jury imposed the lightest sentence. Finally, even if the jury had been improperly influenced by the evidence on the invalid count, the trial judge had responsibility for reviewing those sentences and could have mitigated them if he felt that they were too harsh.

7. Under Kentucky law both robbery and murder offenses are punishable by an indeterminate sentence within statutorily mandated minimum and maximum terms. The jury is given the responsibility of fixing the exact sentence within the limits imposed by the statute. The

The order of the District Court granting the writ of habeas corpus with respect to the gas station murder conviction is affirmed. The order denying the writ of habeas corpus with respect to the robberies is affirmed. The order granting the habeas corpus petition on the jewelry store murder conviction is reversed and remanded with instructions to dismiss the petition.

trial judge is empowered to reduce the jury's sentence where he is of the opinion that it is too harsh. Apparently the trial judge does not have the same power to increase the sentence where he feels that the jury has been too lenient.