**Tex JETT, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Jan. 31, 1969.

As Modified Feb. 7, 1969.

John Swinford, Cynthiana, for appellant.

John B. Breckinridge, Atty. Gen., Charles W. Runyan, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Tex Jett, indicted for detaining Nancy Williams, his 15-year-old sister-in-law, against her will with intent to have carnal knowledge of her, KRS 435.110, was found guilty of assault and battery and sentenced to a year in jail. KRS 431.075. On this appeal he makes one contention, that the trial court committed a prejudicial error by allowing the county sheriff, in rebuttal, to give hearsay evidence consisting of what the appellant's wife had reported to him on the telephone when she summoned his assistance during the night when the offense took place.

Nancy testified that for about two or three hours Tex annoyed her while she was in bed, that he prevented her from getting up and removed some of her clothing.

The appellant's wife testified in his behalf. Under direct examination she related that on the night in question she telephoned the sheriff of Pendleton County once and the sheriff of Harrison County three times because her husband "was drinking and carrying on and things." In describing the events of the evening she did not, however, mention having observed the appellant make any improper advances toward or attempt to molest her little sister. So, on cross-examination the Commonwealth's Attorney asked if she had not told the sheriff of Harrison County over the telephone "that your husband, Tex Jett, was fooling around with or taking advantage of your sister," to which she replied that what she had said to the sheriff was that "We was having trouble and Tex was drunk and wouldn't listen to me." She denied having said that Tex was taking advantage of her sister.

To impeach the testimony given by appellant's wife the Commonwealth's Attorney called the sheriff on rebuttal and asked him what the appellant's wife had told him over the telephone. The sheriff's answer was, "She said Tex was drunk, unruly, wanting to fight and was mistreating her sister on the bed." The trial court duly admonished the jury that this testimony was limited to

the purpose of impeaching that of the appellant's wife.

It is vigorously contended that the admission of this evidence violated the principle stated as follows in Miller v. Commonwealth, 241 Ky. 818, 45 S.W.2d 461, 462 (1932):

> "The witness having answered in the negative the question propounded to her, it was improper to permit the Commonwealth to prove by the witness that he had heard her state the alleged threat by Walter Miller against the deceased. This was clearly incompetent, both as substantive evidence and for the purpose of contradiction. By its admission the Commonwealth was permitted to prove mere hearsay as substantive evidence of an alleged threat by the appellant against the deceased * * *." (Citing cases.)

> "The rule deducible from these cases is that a witness who fails to testify to substantive facts cannot be contradicted by asking him if he had not stated such facts to another person out of court, and then proving by such person that the witness had made the statements out of court. Such procedure transforms mere hearsay into substantive evidence."

■ That the credibility of any and every witness may be impeached "by showing that he has made statements different from his present testimony" was the law in this state as long ago as 1851. See Johnson, Harlan and Loughborough's Code of Practice in Civil Cases for the State of Kentucky (1851), sections 558 (party's own witness) and 559 (adverse party's witness). These provisions (now embodied in CR 43.-07) seem always to have been held applicable to criminal as well as civil proceedings. Cf. Champ v. Commonwealth, 59 Ky. (2 Metc.) 17, 23, 74 Am.Dec. 388 (1859); Patterson v. Commonwealth, 252 Ky. 285, 66

S.W.2d 513, 515 (1934); and note in 47 Ky.L.J. 253 (1959).

There is a long line of cases holding, however, that there can be no contradiction when the witness merely fails to say something he has said outside of court.

> "But a case like the present, where the witness does not state *any fact prejudicial to the party calling him,* but only fails to give facts supposed to be beneficial to the party, it is not within the reason or policy of the rule, and the witness can not be contradicted in such case by evidence that he had previously stated the same facts to others." (Emphasis added.) Champ v. Commonwealth, 59 Ky. (2 Metc.) 17, 24, 74 Am.Dec. 388 (1859). See also McQueen v. Commonwealth, Ky., 393 S.W.2d 787, 791 (1965); Thacker v. Commonwealth, Ky., 401 S.W.2d 64, 67 (1966); and note in 47 Ky.L.J. 253 (1959).

The *Champ* case, quoted above, was one in which the party sought to contradict his own witness, and for some strange reason that seems to be the case in which the question usually has arisen in this state. Hence the frequent expression that a party may thus impeach his "own witness" only when the testimony to be contradicted is "positive." Cf. McQueen v. Commonwealth, Ky., 393 S.W.2d 787, 791 (1965), supra. But, upon the same reasoning, the same rule has been applied also to witnesses for the adverse party:

> "Nor can a witness who fails to testify to substantive facts be asked if he has not made statements to others out of court that such facts exist, for the purpose of proving that he had made such statements, as that would transform declarations made out of court, and not under the sanction of an oath, into substantive testimony." Loving v. Commonwealth, 80 Ky. 507, 511, 4 K.L.R. 457 (1882).[1] See also Saylor v. Commonwealth, 17 K.L.R. 959, 33 S.W. 185, 186

---

1. Though it might seem that the mere *asking of the question* would be allowable for purposes of refreshing the witness' recollection, it was held otherwise in McQueen v. Commonwealth, Ky., 393 S.W. 2d 787, 791 (1965).

(1895); Bergman v. Solomon, 143 Ky. 581, 136 S.W. 1010, 1011 (1911), and Miller v. Commonwealth, 241 Ky. 818, 45 S.W.2d 461, 462 (1932), supra.

"A distinct but somewhat cognate notion [cognate, that is, to the theory that a witness cannot be contradicted as to collateral matters elicited on cross-examination] is the view that if a party interrogates a witness about a fact which would be favorable to the examiner if true, and receives a reply which is merely negative in its effect on examiner's case, the examiner may not by extrinsic evidence prove that the first witness had earlier stated that the fact was true as desired by the inquirer. An affirmative answer would have been material and subject to be impeached by an inconsistent statement, but a negative answer is not damaging to the examiner, but merely disappointing, and may not be thus impeached. In this situation the policy involved is not the saving of time and confusion, as before [as in the case of collateral matters], but the protection of the other party against the hearsay use by the jury of the previous statement." McCormick on Evidence, § 36, p. 67, citing Miller v. Commonwealth, 241 Ky. 818, 45 S.W.2d 461 (1932), supra.

That the out-of-court statement is hearsay, and not given under oath, is the traditional reason why it is generally held not admissible as substantive testimony. That cannot, however, be the reason for denying its admission for purposes of impeachment, because even in those cases where proof of contradictory statements is clearly admissible they are still secondhand. "In short, the *prior statement is not primarily hearsay,* because it is not offered assertive-

ly, i. e., not testimonially. The Hearsay Rule * * * simply forbids the use of extrajudicial utterances as credible *testimonial* assertions; the prior contradiction is not offered as a testimonial assertion to be relied upon. It follows, therefore, that the use of prior self-contradictions is not obnoxious to the Hearsay Rule." Wigmore on Evidence (3d ed.) § 1018 (Vol. III, p. 687). The real basis for its exclusion in the case where the witness has merely failed to come through with something the examiner wanted him to say is that there is nothing to impeach. If he has not said anything damaging to the examiner, there is no purpose to be served by an attack on his credibility. In such a case the only real purpose the out-of-court statement could serve is to supply substantive evidence in the guise of impeachment. That is, of course, the practical effect of such testimony anyway, and a number of the greatest text writers and jurists of our time have agreed that the "artificial rule" against admitting, as substantive evidence, out-of-court statements made by a witness should be either relaxed or completely abandoned. Cf. Wigmore on Evidence (3d ed.), § 1018, (Vol. III, p. 687); McCormick on Evidence, § 39, (pp. 73–82). Both the Model Code of Evidence (Rule 503)[2] of the American Law Institute and the Uniform Rules of Evidence (Rule 63)[3] admit evidence of a hearsay declaration previously made by a person who is present and subject to cross-examination provided the statement would be admissible if made by the declarant while testifying as a witness.

"The courts declare the prior statement to be hearsay because it was not made under oath, subject to the penalty for perjury or to the test of cross-examination. To which

---

2. "Evidence of a hearsay declaration is admissible if the judge finds that the declarant * * * (b) is present and subject to cross-examination."

3. "Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated is hearsay evidence and inadmissible except: * * *.

" * * * (1) Previous statements of Persons Present and Subject to Cross Examination. A statement previously made by a person who is present at the hearing and available for cross examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness * * *."

the answer might well be: 'The declarant as a witness is now under oath and now purports to remember and narrate exactly. The adversary can now expose every element that may carry a danger of misleading the trier of fact both in the previous statement and in the present testimony, and the trier can judge whether both the previous declaration and the present testimony are reliable in whole or in part.'" Edmund M. Morgan, "Hearsay Dangers and the Application of the Hearsay Concept," 62 Harv. L.Rev. 177, 192 (1948).

When both the person who is said to have made the out-of-court statement and the person who says he made it appear as witnesses under oath and subject to cross-examination there is simply no justification for not permitting the jury to hear, as substantive evidence, all they both have to say on the subject and to determine wherein lies the truth. The direct and sensible approach set forth in the Model Code of Evidence and the Uniform Rules of Evidence eliminates the necessity of distinguishing[4] between a "contradiction" and that which from a technical standpoint is not so much contradictory as it is supplementary—that is, between "positive" and "negative" testimony given by the first witness. We are of the opinion that when a witness has testified about some of the facts of a case the jury should know what else he has said about it, so long as it is relevant to the merits of the case as distinguished from collateral issues. Our opinions to the contrary, beginning with Champ v. Commonwealth, 59 Ky. (2 Metc.) 17, 74 Am.Dec. 388 (1859), and including both those that apply to one's own witness and those that apply to the adversary's witness, are overruled.

The result is that an out-of-court statement made by any person who appears as a witness, which statement is material and relevant to the issues of the case, may be received as substantive evidence through the testimony of another witness, and need not be limited to impeachment purposes. CR 43.07 therefore does not apply, though we are of the further opinion that the same type of foundation must be laid as required by CR 43.08 in order that the witness whose testimony is to be contradicted, supplemented, or otherwise affected by the out-of-court statement may have a proper and timely opportunity to give his version or explanation of it. The same rule shall apply regardless of whether the witness whose out-of-court statement is to be proved appears as a witness for the party who intends to prove it or as a witness for the adversary party.

It would not be unreasonable to take the view in this case that the testimony of appellant's wife to the effect that he and her sister were "just sitting on the bed," and "just talking, arguing, things like that," amounted in substance and effect to "positive" evidence that appellant was not molesting her sister. It might also be held that her telephone report to the sheriff was a spontaneous declaration made so closely after or in connection with the event as to be admissible under the principles discussed in the recent case of Preston v. Commonwealth, Ky., 406 S.W.2d 398 (1966). Either of these approaches would avoid the technical objections raised against the sheriff's testimony, but we think the sound and better solution is to expunge the technicality.

The judgment is affirmed.

All concur.

---

4. See, for example, Commonwealth v. Jackson, Ky., 281 S.W.2d 891 (1955).