**Curtis Lee MAYES, Appellant,**

v.

**COMMONWEALTH of Kentucky,
Appellee.**

Supreme Court of Kentucky.

March 14, 1978.

Terrence R. Fitzgerald, Deputy Dist. Defender, Daniel T. Goyette, Asst. Director, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., Patrick B. Kimberlin, III, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Curtis Lee Mayes and his cousin, Leslie Beecham, were each indicted separately for the commission of two robbery-murders that occurred in Louisville, Kentucky.

At the time the crimes were committed Mayes was two months short of being 18 years old. The Jefferson County Juvenile Court transferred jurisdiction of his case to the circuit court.

On the morning of the trial, May 25, 1977, after the jury had been selected, but before the trial began, Beecham entered a plea of guilty. Upon the recommendation of the Commonwealth's Attorney that Beecham receive a sentence of 25 years on each of the homicide charges, and a sentence of 20 years on each of the robbery charges, the trial court accepted the plea. However, sentencing was deferred pending a pre-sentence report. The same recommendation and offer was made to Mayes. He refused the offer and was tried and convicted on all charges. From a judgment entered in conformity with the jury's verdict imposing two life sentences on the murder charges and two sentences for robbery totaling 32½ years, Mayes prosecutes this appeal. He asserts that the Jefferson County Juvenile

Court illegally transferred jurisdiction of his case to the circuit court; that the trial court erred by permitting the Commonwealth's Attorney to impeach a portion of Beecham's testimony; and that his confession was illegally obtained and involuntarily given.

In view of Mayes' assertions of error, this court finds it is necessary to detail some of the relevant facts.

The first robbery-murder occurred at Duncan's Standard Service Station on Gardiner Lane in the city of Louisville on August 1, 1976. During the course of the robbery the attendant, Charles Ferguson, was murdered. Sometime after 4:00 A.M. the night clerk at Ramada Inn, located across the street from the service station, was approached by a motorist who inquired why no one was at the station, although the lights were on. The clerk and the motorist went to the station. They found the body of Ferguson lying in a pool of blood in the station's rest room. The police were notified and arrived at the scene shortly thereafter. Jim Duncan, owner of the station, testified at trial that $147.62 had been taken. The doctor who performed the autopsy testified that Ferguson died as a result of two gunshot wounds in the head.

The other robbery murder occurred at Hannah Jewelers, 3318 Naomi Lane, Louisville, Ky. Mrs. Grace Noble, a part-time employee, arrived at work about 1:10 P.M. Mrs. Noble went to a room at the rear of the store to do some paper work. About 1:20 P.M., William Hannah, owner of the store, went across the street to have lunch. A customer, Joyce Dewitt, entered the store sometime between 1:20 and 1:30 P.M. No one was in the front showroom. Mrs. Dewitt called for assistance, and heard someone in the back room say, "I can't come out right now." At 1:30 P.M., the accountant for the jewelry store arrived. He found no one in the store. However, he noticed the jewelry case where rings, watches and diamonds were kept was empty. He entered a back room where Mrs. Noble's body was found. A pathologist testified that Mrs. Noble had been stabbed 13 times and that at least two of the wounds caused her death. Mr. Hannah testified that rings and watches valued at $5600.00 had been taken.

Acting on a tip of an informant, Detective Spellman took Mayes into custody at 8:00 P.M., August 13, 1976, and took him to police headquarters for questioning. Subsequently, Mayes admitted his part in the two robbery-murders. Later, he took the officers to a sewer in the neighborhood where he lived. There they found a shopping bag containing a hunting knife and tags from watch bands taken from Hannah's. Mayes was cooperative with the officers. He and the police had breakfast and returned to the police station. After signing a waiver of his rights,[1] Mayes gave the police a lengthy oral statement which was recorded. He admitted participation in the crimes, but denied that he murdered Ferguson and Mrs. Noble. He admitted that he shared in the fruits of the robberies. He told the officers that his cousin Leslie Beecham shot Ferguson and "put Mrs. Noble to sleep." Mayes requested that he be taken to an aunt's house where he lived, so that he could tell members of his family about his participation in the crimes before they found out about it in the newspapers. He provided the officers with the clothing he and Beecham wore the day of the jewelry robbery.[2] The police complied with Mayes' request. After a short visit with members of his family, fond farewells were exchanged and he, accompanied by the police, returned to the police station.

The above is a narrative account of the two robbery-murders. Additional details will be mentioned as they appear relevant to the questions presented.

1. *Miranda v. Arizona*, 384 U.S. 346, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. The Commonwealth presented in evidence a frame from a sequence of film taken by a hidden surveillance camera at the jewelry store. This frame showed two black males standing at the "showcase." They were dressed in clothes similar to the clothes found at the home of Mayes. Mayes identified the "blown-up" photograph as being that of him and his cousin Beecham.

■ This court rejects Mayes' claim that the juvenile court illegally transferred his case to the circuit court. The juvenile court heard evidence and arguments on the issue of whether the best interest of Mayes and the public required that he be tried under the law governing crimes. Mayes was represented by counsel at the hearing and thereafter. His rights were fully explained to him.

The juvenile court made findings of fact in strict compliance with statutory criteria for transfer as expressed in KRS 208.170(3). It found that the offenses were committed against persons rather than property; that the offenses had sufficient prosecutive merit to warrant transfer to circuit court; that the offenses were aggressive, premeditated, willful and committed without remorse; that the juvenile court records and testimony of witnesses demonstrated sufficient reasons to warrant transfer and that Mayes "is now 18 years of age and found to be not susceptible to treatment or rehabilitation within the juvenile *facilities available to the county*." (Emphasis added). The juvenile court also found Mayes "is in specific need of long term treatment for unsocialized, aggressive behaviour."

This court finds that the order of transfer afforded Mayes every constitutional protection provided by law [3] and was a proper order of transfer.

■ Mayes' second argument is based upon the admission of a prior inconsistent statement of Beecham introduced by the testimony of Officer Spellman. Mayes contends the testimony was not admissible under the exception in *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969). When Beecham was called as a witness for the Commonwealth, he testified as follows:

"Q. State your name for the record please.
A. Leslie Beecham.
Q. Where do you reside?
A. What you say?
Q. Where do you live?
A. 5208 Kilmer.
Q. Mr. Beecham, I would like to direct your attention back to the early morning of August 1st of 1976: Were you present between the hours of 1:00 and 4:00 in the morning at the Duncan Standard Service Station?
A. No, I wasn't.
Q. Did you have any conversation with Curtis Mayes afterward as to what may have transpired at that location?
A. No."

A number of other questions were asked Beecham. He responded to none of them other than to say: "I said I am not going to testify against Curtis Mayes about anything."

Upon request of counsel for Mayes, a conference was held in chambers. He argued that Beecham's refusal to answer questions prevented any cross-examination, and the admission of his prior statement was a denial of the right of confrontation. Following the conference, Beecham again took the witness stand. He again refused to answer the prosecutor's questions. At a conference at the bench Mayes' attorney was permitted to cross-examine Beecham but declined. He explained his reasons in this fashion:

"The position that I am in, at this time, is that if I ask the question I am certainly damned; if I don't ask the question then I create some sort of inference in the jurors' minds and I don't know what that inference is.

"But as the defense lawyer in this situation I prefer not to ask Mr. Beecham any further questions. First of all, I don't know what the answer would be and secondly, if I get any response whatsoever I am tying the noose very tightly around my client's neck and therefore I prefer not to ask any questions."
The Court: "okay."

---

3. *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966); *Sharp v. Commonwealth*, Ky., 559 S.W.2d 727 (1977).

Officer John Spellman was recalled as a witness for the Commonwealth. The relevant part of his testimony follows:

"Q. Did he (Beecham) give a statement to you inconsistent with the answer he just gave to this court as to him not being present at the Duncan Service Station on the morning of August 1st?

A. He did.

Q. Would you tell us what he stated to you?

A. Beecham stated: 'I was with him (Mayes) at the Duncan Standard Service Station but he, meaning defendant Curtis Mayes, did the killing.'"

This court is of the view that counsel for Mayes misconstrues the holding in *Jett, supra.* In *Jett,* this court stated:

"The result is that an out-of-court statement made by any person who appears as a witness, which statement is material and relevant to the issues of the case, may be received as substantive evidence through the testimony of another witness, and need not be limited to impeachment purposes. CR 43.07 therefore does not apply, though we are of the further opinion that the same type of foundation must be laid as required by CR 43.08 in order that the witness whose testimony is to be contradicted, supplemented, or otherwise affected by the out-of-court statement may have a proper and timely opportunity to give his version or explanation of it. The same rule shall apply regardless of whether the witness whose out-of-court statement is to be proved appears as a witness for the party who intends to prove it or as a witness for the adversary party." *Jett, supra,* at page 792.

Mayes was afforded an opportunity to cross-examine Beecham, but waived the exercise of that right. Officer Spellman was also a witness and was subjected to cross-examination. Therefore, Mayes was not denied the right of confrontation. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The testimony of Officer Spellman was within the scope of the *Jett* rule and was properly admitted.

■ Mayes' final argument pertains to the admission of his taped confession. He alleges that the statement admitting his participation in the crimes was involuntary and obtained by physical coercion. Prior to trial a suppression hearing was held in chambers at which Officer Spellman and Mayes testified. Spellman testified that he advised Mayes of his rights under *Miranda, supra,* but that at no time did Mayes request an attorney. He testified also that Mayes was cooperative and voluntarily signed a waiver of rights before his statement was recorded.

Mayes' version of the interrogation painted a picture of relentless brutality. He asserts that he made the statement because the officers beat him. However, the confession is stated in clear, concise and in uninterrupted terms. The statement refutes Mayes' claims of brutality. His actions before and after the statement was made are inconsistent with his conduct in assisting the officers in their search for the truth. The trial court found Mayes' confession to be voluntary on the basis of the entire proceedings at trial. This court cannot call his findings clearly erroneous. *Allee v. Commonwealth,* Ky., 454 S.W.2d 336 (1970); *Hayden v. Commonwealth,* Ky., 563 S.W.2d 720 (Decided this date).

The judgment is affirmed.

All concur.