**Robert Lee ASKEW, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**No. 85–SC–251–MR.**

Supreme Court of Kentucky.

April 6, 1989.

Timothy T. Riddell, Julie Namkin, Asst. Public Advocates, Dept. of Public Advocacy, Frankfort, for appellant.

Frederic J. Cowan, Atty. Gen., Connie V. Malone, David W. Mossbrook, Asst. Attys. Gen., Frankfort, for appellee.

LAMBERT, Justice.

Upon a jury verdict, Robert Lee Askew was convicted of robbery in the first degree and murder. He was sentenced to a term of twenty years in the penitentiary for the offense of robbery and to death by electrocution for the offense of murder. He appeals to this Court as a matter of right.

In the early morning hours of May 26, 1983, three men entered the Good Times Bar in Louisville. After ordering and paying for a beer, one of the men went to a secluded place inside the bar known as the "cubbyhole." Seated at a table in the "cubbyhole" were Sandy Greenbaum and Betty Sue Rider (Colyer). Within a short time of his arrival, the man produced a gun and ordered Ms. Rider to take off her watch and rings and ordered Mr. Greenbaum to "empty his pockets."

While the robbery was in progress, waitress Donna Hill walked into the "cubbyhole." She was told by Ms. Rider to "get the manager. It's a robbery." With that, Donna started to run and as she ran, the man with the gun followed her and yelled, "Stop bitch." He then shot her and she fell against the wall. In a moment, Donna was able to get back to her feet and started to run again. With that, the man with the gun shot her again and she fell mortally wounded. While this was going on, anoth-

er of the three men pointed a gun at the manager of the bar, Carol Matthews. In response to his demand for all the money in the cash register, Carol gave him $370. After this, the three men fled.

An extensive investigation followed the murder and robbery. Several months passed during which time the Jefferson County Police Department collected information from various sources. As a result of a Crime Stoppers tip and a telephone call and personal interview with Sahieta Franklin, the primary suspects became appellant and Sahieta's husband Cleveland Franklin. After appellant learned that he was the focus of the investigation, he turned himself in to the police, and on the following day was positively identified in a lineup by Betty Sue Rider as the person who killed Donna Hill. At trial, witness Michael Sanders placed appellant in the location from which the fatal shot was fired and Betty Sue Ryder repeated her positive identification of appellant as the shooter. Appellant testified on his own behalf and denied being in the bar.

Appellant makes twenty-four claims of error. In this opinion we have addressed only those which merit discussion. The other claims have been examined and found to be without merit, unlikely to recur upon retrial, or harmless.

Appellant first contends that he was denied a fair trial and due process of law when the Commonwealth failed to timely disclose a "deal" it had made with witness Jeffrey Palmer in exchange for his testimony. We need not address this issue in view of our decision to reverse the judgment of the court below. However, we observe that one of the principal objections to the Palmer testimony, i.e., failure of the Commonwealth to timely disclose its agreement with Palmer, has now been eliminated by full disclosure. Upon retrial, the trial court should reconsider its ruling as to the admissibility of this testimony.

■ Appellant next contends that the trial court erred in overruling his motion for a mistrial following the Commonwealth's motion, in the presence of the jury, to dismiss the indictment against co-defendant Cleveland Franklin.

Prior to dismissal of the case against Franklin, the trial court excluded the testimony of witness Jeffrey Palmer. Recognizing that without Palmer's testimony, a case could not be proven against Franklin, in open court, the attorney for the Commonwealth said:

MR. SIMON: At this time, Your Honor, the Commonwealth believes that under the circumstances and due to the evidence introduced thus far at trial, the Commonwealth will not be able to prove its case beyond a reasonable doubt against Cleveland Franklin. Therefore, the Commonwealth moves that the indictment as it pertains to Cleveland Franklin only be dismissed.

In response, the trial court sustained the motion and admonished the jury as follows:

THE COURT: The motion to dismiss the Indictment as to the Defendant, Franklin, is sustained under the conditions stated. The dismissal in regard to one Defendant in a case is not to be taken by you in either direction toward the guilt or innocence of another Defendant in the case, specifically, Mr. Askew, you are to make no inference one way or the other in regard to Mr. Askew's case based upon the dismissal of Mr. Franklin's case, and don't discuss this case while you are gone, folks.

The theory underlying appellant's claim on this issue is that dismissal of one co-defendant in the presence of the jury creates an inference that the co-defendant who was not dismissed and remains on trial is guilty. We reject this argument.

The record does not indicate that the Commonwealth attempted to make any improper use of the dismissal. In its oral motion, the stated reason was "the Commonwealth will not be able to prove its case beyond a reasonable doubt against Cleveland Franklin." At no time did the Commonwealth's attorney indicate that Franklin was not guilty nor did he attempt to curry favor with the jury by portraying his fairness. Throughout the trial, the Commonwealth maintained that appellant and

Franklin were both guilty and in summation, the Commonwealth explained that due to difficulties in proof, a conscious decision was made "to concentrate on the shooter rather than the man who was up front robbing the place."

In support of his claim of error, appellant relies in part upon the prohibition against informing the jury that a co-defendant has entered a guilty plea. *Tipton v. Commonwealth*, Ky., 640 S.W.2d 818 (1982). Our reversal in *Tipton*, however, was based on the blatant attempt to use the guilty plea of a co-defendant as substantive evidence against the defendant on trial. We denounced any attempt to establish guilt by association. In the instant case, however, the facts are inapposite.

This issue was squarely addressed in *United States v. Barclift*, 514 F.2d 1073 (9th Cir.1975), and the court held:

> The motion, in open court, to dismiss the case as to one defendant might well have been made and ruled upon in the absence of the jury, but the question of prejudice was addressed to the sound discretion of the court in a motion for mistrial. No abuse of discretion has been demonstrated in the denial of the motion.

*Id.* at 1074.

Although better practice dictates such a motion be made outside the presence and hearing of the jury, we do not believe appellant was prejudiced, and if he was, the court's admonition cured it.

■ Appellant next contends that the trial court erred in overruling his motion for directed verdict on the robbery charge. He argues that insufficient evidence was presented to justify a finding beyond a reasonable doubt that he acted in complicity in the bar robbery.

The standard observed by this Court in determining whether a directed verdict is proper is found in *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983), to-wit:

> With the evidence viewed in the light most favorable to the Commonwealth, if the totality of the evidence is such that the trial judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt, then the evidence is sufficient and the case should be submitted to the jury.

*Id.* at 4. See also *Trowel v. Commonwealth*, Ky., 550 S.W.2d 530 (1977).

It is appellant's contention that his involvement in the robbery was separate and distinct from the robbery which occurred simultaneously at the front of the Good Times Bar; that the two robberies were merely a remarkable coincidence. At trial, evidence was presented which substantially linked appellant with the two other men in perpetrating the robbery. They arrived together, went to different locations inside the bar, and after the robberies and shooting, ran out together. Under *Sawhill, supra*, the jury could properly find guilt beyond a reasonable doubt. The court properly refused to direct a verdict of acquittal of first degree robbery.

Appellant further contends that he was mislead or did not fully understand his right to have a jury fix his sentence. We have examined this issue and found it to be insubstantial. However, we need not address this issue more fully in view of our decision. Upon remand, appellant shall have a right to a jury trial as to both guilt and punishment.

■ Appellant further contends that the trial court sentenced him to death without expressly finding a statutory aggravating circumstance beyond a reasonable doubt.

KRS 532.025(3) provides:

> The jury, if its verdict be a recommendation of death ... shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt. In non-jury cases the judge shall make such designation. In all cases unless at least one of the statutory aggravating circumstances enumerated in subsection (2) of this section is so found, the death penalty shall not be imposed.

Clearly, the statute requires the finding of an aggravating circumstance beyond a reasonable doubt before the death penalty may be imposed either by the judge or

jury. It does not follow, however, that the trial judge, if the finding is to be made by him, must use the exact language of the statute. This Court has held that different procedures apply when the judge determines mitigating and aggravating factors, and that it is unnecessary for a judge to instruct himself. *Bevins v. Commonwealth*, Ky., 712 S.W.2d 932 (1986). Moreover, the trial court stated the basis for his finding in such a manner as to exclude any doubt that he found the existence of an aggravating factor. From the record below, we are satisfied that the trial judge applied the proper evidentiary standard in finding aggravating factors. However, better practice dictates strict compliance with the statute and in the event this issue presents itself upon remand, the aggravating circumstance found shall be stated in writing. KRS 532.025(3).

█ Finally we turn to an issue which requires reversal of this conviction and remand to the trial court: Error in the admission of prejudicial hearsay evidence.

After the indictment against Franklin was dismissed, the Commonwealth called him as its witness. After establishing an acquaintance between Franklin and appellant, the Commonwealth asked "Is it not true that you told your wife Sahieta all about the Good Times Bar robbery and homicide?" Before any objection by appellant's or Franklin's counsel, Franklin replied "I'm going to answer that. That's not the truth." The prosecutor rephrased the question and asked it again to which Franklin gave a similar answer. Despite an aborted attempt by Franklin's counsel to prevent his testimony on Fifth Amendment grounds, Franklin was asked on several occasions "Did you tell your wife Sahieta . . ." about various things which were done and said in connection with the robbery. In response to every question, Franklin denied having made such statements to his wife.

The next witness called was Sahieta Franklin. At length, she was inquired of concerning statements made to her by her husband. While her testimony was evasive, it can fairly be said that she denied that her husband made any of the statements inquired about.

The next persons to testify were two police officers who had talked with Sahieta Franklin. As a part of their testimony, they were permitted to play for the jury a tape-recorded statement in which Sahieta said, among other things, that her husband told her that appellant said "I had to burn her (the victim), man, she was running for the door."

In calling Cleveland Franklin and Sahieta Franklin as witnesses, it was the Commonwealth's manifest purpose to lay a foundation for the police officer's testimony and introduction of the tape recordings of their conversations with Sahieta. The Comonwealth reasoned that such evidence, if admitted, would be persuasive of appellant's guilt. Despite its admitted purpose in calling the Franklins, however, the Commonwealth took the ostensible approach of impeaching the Franklins by prior contradictory statements.

Notably absent from any of the Commonwealth's questions to Cleveland Franklin is any inquiry as to what appellant said or did. All of the questions to Franklin were phrased in terms of "what did you tell your wife," and the questions to Sahieta were "what did your husband tell you," and "what did you tell the police?" At no time were the statements and acts alleged to have occurred in connection with the robbery and murder directly attributed to appellant. Thus the inquiry relevant to the facts of the case against appellant was never made. Without a direct inquiry as to what appellant did or said, Franklin's statements to his wife are not only irrelevant, but are unreliable as well. The questions asked Franklin were not premised on his personal knowledge of what appellant said or did. Franklin's statements to his wife could have as easily come from information gained on the street.

The Commonwealth argues that the testimony of Sahieta and the police officers was properly presented for impeachment purposes, but was also admissible as substantive evidence under the *Jett* doctrine.

This Court's decision in *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969), expanded the permissible use of prior inconsistent testimony from mere impeachment to use as substantive evidence. It was our position that the trier of fact was entitled to be informed of prior inconsistent statements made by the witness and permitted to weigh both versions to determine where the truth lay. We said:

> When both the person who is said to have made the out-of-court statement and the person who says he made it appear as witnesses under oath and subject to cross-examination, there is simply no justification for not permitting the jury to hear, as substantive evidence, all they both have to say on the subject. . . .

*Id.* at 792

As a condition, however, to the admission of such out-of-court statements, we required:

> . . . the same type of foundation . . . as required by CR 43.08, in order that the witness whose testimony is to be contradicted, supplemented, or otherwise affected . . . may have a proper and timely opportunity to give his version and explanation of it.

*Id.*

In addition to the requirements just described, *Jett* statements must be ". . . material and relevant to the issues of the case. . . .", and if not otherwise apparent, such must be established in laying a proper foundation. If, as we have often held, a witness may not be impeached on collateral facts, the rule that such testimony shall be excluded as substantive evidence applies with greater force. *Id.* The reason for such a rule is that the focus of the jury should not be diverted from the merits of the controversy. *Baker Pool Co. v. Bennett*, Ky., 411 S.W.2d 335 (1967).

In *Norton v. Commonwealth*, Ky., 471 S.W.2d 302 (1971), this court examined the requirements of *Jett* and the foundation requirements prescribed by CR 43.08. A police officer was permitted to testify that a witness had delivered empty cartridges to him and was allowed to repeat a statement the witness had made. The cartridges and statement connected appellant to the crime charged. During the witness' testimony earlier in the trial, however, the only foundation laid by the Commonwealth was whether the witness had seen and given the officer something on the day in question. There was no question to the witness as to whether he made a statement or had a conversation with the officer. Reversing the conviction for failure to lay a proper foundation, this court held that the inquiry which must be made is of the alleged prior statement.

Returning the facts of this case, Sahieta Franklin's tape recorded statement which was introduced through a police officer, quoted Cleveland Franklin as saying that appellant had said, "I had to burn her (the victim), man, she was running for the door." Nowhere was Cleveland Franklin ever asked, however, if appellant had in fact made that statement. What Cleveland Franklin told his wife is, at best, collateral to the issue before the Court, but indirectly informing the jury that such a statement was made by appellant was highly prejudicial.

In deciding this case we have dealt with the facts presented and emphasized the absence of any question to Franklin which connected appellant with the statement attributed to him. This should not be construed, however, as approval of the admissibility of Sahieta's statement to the police by simply asking Franklin if appellant made the statement. The *Jett* rule permits impeachment of a witness who possesses personal knowledge by proof of a prior contradicting statement. When the second witness, called for the purpose of disclosing the prior contradictory statement of the first witness, denies that the statement was made, it is improper to allow attempted impeachment of him. If it were otherwise, a long succession of witnesses could be called until finally one was found who would testify that the previous witness had earlier told a different story.

Upon retrial, the Commonwealth shall be entitled to ask Franklin if he heard appellant's statement and whether he repeated it to Sahieta. If Franklin continues to deny

such, then Sahieta may be asked if he told her of the statement attributed to appellant. If Sahieta denies that Franklin told her of the statement, the inquiry must stop. Sahieta, having no personal knowledge of what appellant is alleged to have told Franklin, cannot be impeached on this point.

The real mischief in admitting Sahieta's tape recorded statement is that a connection between appellant and the statement attributed to him was never shown. In the manner of its introduction the statement is inherently unreliable. If under the guise of *Jett* evidence such as this is admitted, the hearsay rule would pass into non-existence.

For the foregoing reason, the judgment is reversed and remanded to the trial court.

All concur except VANCE, J., who concurs in result only.