# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

2014-SC-000222-MR

JERRY CALLAHAN                              APPELLANT

V.                ON APPEAL FROM CLAY CIRCUIT COURT
              HONORABLE OSCAR G. HOUSE, JUDGE
              NO. 07-CR-00105-001

COMMONWEALTH OF KENTUCKY               APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING IN PART, REVERSING IN PART AND REMANDING**

In the fall of 2006, the Appellant, Jerry Callahan, and his family moved from Clark County, Kentucky, to Clay County, Kentucky. Soon thereafter, Callahan committed a series of sex crimes against three minor girls while living in Clay County. One victim was his stepdaughter, Amanda.[1] She was six years' old at the time. The other two victims, Christy and Alice, were Callahan's daughters. Alice was sixteen at the time and Christy was under eighteen. The children were removed from their parents' custody on November 30, 2006. Allegations of sexual abuse first surfaced in 2007. Callahan was subsequently arrested and indicted on numerous charges.

---

[1] Pseudonyms are being used to protect the anonymity of all the child victims.

Callahan's wife, Rebecca, was also indicted on several counts and provided a statement to the police detailing the sexual abuse. A recording of that interview was played for the jury. Rebecca subsequently pled guilty to first-degree sodomy by forcible compulsion. She then recanted her previous statements to the police during her live testimony at Callahan's trial. Alice also recanted her prior statements wherein she stated that Callahan had sexually abused them. Christy testified at trial that she had no memory of being interviewed and denied that Callahan had ever abused her. Amanda was determined to be incompetent to testify. The prior statements of Rebecca and Alice were introduced against Callahan pursuant to *Jett v. Commonwealth*, 436 S.W.2d 788 (Ky. 1969).

A Clay Circuit Court jury convicted Callahan on two counts of first-degree rape (Amanda and Christy), one count of third-degree rape (Alice), three counts of incest (Amanda, Alice, and Christy), two counts of first-degree sodomy (Amanda and Alice), and two counts of first-degree sexual abuse (Amanda and Alice). The sentences were ordered to run concurrently for a total sentence of 35 years' imprisonment. Callahan now appeals his judgment and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Several issues are raised and addressed as follows.

The Commonwealth has conceded reversible error as to the third-degree rape conviction involving Alice. It is conceded that the Commonwealth failed to prove that Alice was less than 16 years of age at the time of the offense. Therefore that conviction is reversed. The Commonwealth also concedes

2

reversible error for lack of sufficient evidence that Callahan himself committed sodomy against Amanda and Alice. Those charges are therefore reversed. We remand this case to the trial court to dismiss the third-degree rape conviction and the sodomy convictions.

The remaining convictions to be considered by this court are as follows: (1) two counts of first degree rape as to Amanda and Christy; (2) three counts of incest as to Amanda, Alice, and Christy; and (3) two counts of first degree sexual abuse in regard to Amanda and Alice.

## **Directed Verdict**

For the first time on appeal, Callahan presents several specific arguments in support of his contention that the trial court erred in denying his motion for a directed verdict of acquittal, which was a general motion that challenged the sufficiency of *all* charges. Therefore, Callahan has failed to properly preserve his specific claims on appeal that concern only some of his convictions. Therefore, we will review for palpable error. *Johnson v. Commonwealth*, 292 S.W.3d 889, 899 at n. 9. (Ky. 2009). *See also* RCr 10.26; and *McCleery v. Commonwealth*, 410 S.W.3d 597, 606 (Ky. 2013) (we will not reverse unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error.").

Callahan argues that the Commonwealth failed to present evidence of forcible compulsion, which is a necessary element of one count of first-degree rape (Christy), and one count of sexual abuse (Alice). Callahan concedes that

3

he failed to raise this specific argument at trial when making his motion for a directed verdict. KRS 510.010(2) defines forcible compulsion as:

> physical force or threat of physical force, express or implied, which places a person in fear of immediate death, physical injury to self or another person, fear of the immediate kidnap of self or another person, or fear of any offense under this chapter. Physical resistance on the part of the victim shall not be necessary to meet this definition[.]

In *Yates v. Commonwealth*, we stated that "forcible compulsion, which must be the means of effecting sexual contact, can be accomplished in two ways: by physical force or by threat of physical force." 430 S.W.3d 883, 890 (Ky. 2014). Contrary to Callahan's argument here, Rebecca's testimony clearly indicates forcible compulsion. For example, she stated that she witnessed Christy smack Callahan while he was forcing himself on her, and that Callahan smacked her and ripped her shirt off in order to overcome her resistance and accomplish the rape.

In regards to Alice, Rebecca stated during her police interview that Alice cried when Callahan inserted a sex toy into her vagina and that Callahan said that he would hurt both of them if they did not comply. *See Yates*, 430 S.W.3d at 892-94. In her recorded interview with social workers, Alice also stated that Callahan would call family meetings at which he would yell at the children and then do sexual things to them. This is clear evidence of forcible compulsion against not only Alice, but all the victims. We addressed a similar issue in *Yarnell v. Commonwealth*, wherein we held that it was not unreasonable for the jury to determine that the defendant engaged in sexual intercourse with the victims by means of forcible compulsion, where the evidence indicated that

4

victims were under constant emotional, verbal, and physical duress. 833 S.W.2d 834, 837 (Ky. 1992). Therefore, there was no error here and certainly no palpable error.

## Unanimous Verdict

Callahan contends that due to defects in the jury instructions, the jury's verdict on all counts failed to satisfy Kentucky's unanimous verdict requirement. *See, e.g., Harp v., Commonwealth*, 266 S.W.3d 813, 819 (Ky. 2009) (holding that "the law requires specific identifiers to be placed in each count in a case involving multiple counts of the same offense."). It is unclear whether this issue is properly preserved. At trial, defense counsel moved for a directed verdict and argued that the time frame in the jury instructions was "too vague" to give jurors any certainty in applying the instructions. However, this argument was framed as a directed verdict issue, not a unanimity issue. In any event, a violation of a defendant's right to unanimous verdict constitutes reversible error, whether the issue is preserved or not. *Johnson v. Commonwealth*, 405 S.W.3d 439, 448 (Ky. 2013). Because we have reversed Callahan's convictions for third-degree rape and sodomy, we will not address Callahan's unanimity argument concerning those crimes.

All of the jury instructions at issue here required the jury to find guilt only if the crime alleged occurred in Clay County, "on or about a period of time prior to November 30, 2006." As previously stated, the evidence demonstrated that the victims and Rebecca moved from Clark County to Clay County around the fall of 2006. Callahan argues in part that, because Rebecca's statement to

5

the police indicated that Callahan perpetrated various sexual crimes against the victims in Clark County as well as Clay County, it is impossible to know with certainty which crimes occurred in Clay County.

In *Kingrey v. Commonwealth,* the jury instruction provided for conviction if the jury determined that the defendant "committed the crime between January 1, 2007, and May 31, 2008." 396 S.W.3d 824, 830 (Ky. 2013). In that case evidence was presented at trial that, during this time period, the defendant committed multiple acts that constituted the one offense for which he was convicted. *Id.* at 831. We reversed because it was unclear "which instance of the crime is the basis of his conviction . . . ." *Kingrey,* 396 S.W.3d at 832.

Unlike *Kingrey,* the evidence in the present case established singular instances from which the jury could find guilt for each crime charged. Compare *Johnson,* 405 S.W.3d at 449 (finding palpable error where the jury instruction "did not require the jury to differentiate which of the two instances was the basis of the conviction."). To clarify, while Rebecca's statements to the police in the present case recounted multiple events, she presented only one event per victim that corresponded with each crime charged. More precisely, Rebecca stated that she observed the following: 1) one instance of rape against Amanda; 2) one instance of rape against Christy; 3) one instance of sexual abuse against Alice; and 4) one instance of sexual abuse against Amanda. Therefore, this case is most similar to *Bennington v. Commonwealth,* where we held:

While the instructions do not detail the specifics of each particular instance of sodomy, rape, and incest, such as the setting or the exact conduct engaged in, such detail is not required. There is no uncertainty as to which crime the jury convicted of on each count and thus, no deprivation of a unanimous verdict.

348 S.W.3d 613, 623 (Ky. 2011).

Callahan also argues that it is impossible to know with certainty which crimes occurred in Clay County and which occurred in Clark County. Contrary to Callahan's assertion, however, Rebecca told the police that each of the above cited instances occurred in Clay County. The jury heard that statement.

Furthermore, Callahan states that, in addition to the singular event where Rebecca described Callahan raping Christy, Rebecca also stated that she witnessed Callahan "bent over" Christy on a separate occasion. However, that latter undeveloped statement does not indicate that an additional rape occurred. Thus, there is no unanimity issue.

During her recorded interview, Alice also discussed Callahan's pattern of sexual abuse, including when Callahan would call "family meetings" at which he would yell at the children and then sexually abuse them. The social worker participating in Alice's interview asked Alice whether she and her siblings had been sexually abused on as many as 120 occasions. Alice agreed. At trial, however, Alice recanted her previous statements to the police.

Callahan asserts that there is a unanimity issue here because of the uncertainty concerning which of these many sexual occurrences between Callahan and the victims provided the basis for his convictions. We disagree. As the Commonwealth correctly observes, Alice did not describe any single

7

specific act of rape, incest, or sexual abuse. In contrast, Rebecca described *specific* instances of sexual acts committed against each of the victims. Therefore, Alice's prior statement does not create a unanimity issue. There was no error here.

Lastly, Callahan argues that a unanimity issue exists concerning his incest conviction against Amanda. This issue is unpreserved. He contends that this incident of incest could have occurred prior to the effective date of the amended incest statute, KRS 530.020, which was July 12, 2006.[2]

Prior to that date, KRS 530.020 did not include the age of the victim and was defined as a Class C felony. After that date, the statute was divided into various classes based on the age of the victim. The jury found that, because Amanda was less than 12 years' old when the incest occurred, Callahan was guilty of a Class A felony. Callahan testified that the Callahan family moved back to Clay County in 2006, possibly around July. He was not very certain of his recollection. Because the jury instruction provided that the incest occurred "prior to November 30, 2006," Callahan argues that there is no way to know whether the incest against Amanda also occurred prior to July 12, 2006, the effective date of the amended version of KRS 530.020.

This issue concerns the sufficiency of the evidence, not unanimity of the verdict. Nevertheless, unlike Callahan's uncertain recollection of the time of the move, Alice unambiguously testified that the Callahan family did not move

---

[2] KRS 530.020 was most recently amended in 2012.

back to Clay County until the fall of 2006, after the school year began. Therefore, there was sufficient evidence that the incestuous act occurred after July of 2006. There was no palpable error here.

## Hearsay Testimony

On the morning of trial, defense counsel moved to exclude all hearsay statements made by Amanda because she had been declared incompetent to testify due to her inability to recall with specificity the instances of sexual abuse. The court granted the motion. During trial, Tracy Miller, who was employed by the Children's Advocacy Center in London, Kentucky, testified that, when interviewing Amanda, she appeared "nervous and frightened." Callahan also objected to Ms. Miller's testimony, which the trial court overruled. This observation of Amanda's physical demeanor is not hearsay and, therefore, was properly admitted. KRE 801(c).

Callahan also challenges the testimony of Dr. Jackie Crawford, the victims' family physician. Dr. Crawford testified that his findings were consistent with what Amanda had told him, including her statements that she had been "touched and penetrated." Callahan did not object to this testimony. At the close of Commonwealth's proof, however, Callahan requested that the court admonish the jury not to consider Amanda's hearsay statements that were admitted through Rebecca's recorded police interview. The court agreed and admonished the jury not to consider "anything that anybody has testified that [Amanda] has told them . . . ." The court also informed the jury that Amanda was incompetent to testify and that her hearsay statements were

9

incompetent evidence. It is well-settled that "[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003).

Moreover, any error here was harmless. Dr. Crawford did not testify that Amanda identified Callahan as the one who raped and abused her. Nor did this testimony contradict Callahan's own defense. Callahan never denied that Amanda was raped and abused; rather, he denied that *he* was the perpetrator.

Callahan also vaguely argues that "Amanda's statements do not meet the *Crawford* exception." *See Crawford v. Washington*, 541 U.S. 36 (2004). Yet, Callahan fails to cite any specific statements with which he now takes issue. This issue is unpreserved.

*Crawford* held that the Sixth Amendment's Confrontation Clause bars the admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 53–54. As previously noted, Amanda was determined to be incompetent to testify and, thus, was not subjected to cross-examination. And although he quotes several cases, Callahan does not explain how the testimony of any witnesses violated the "*Crawford* exception." He merely states that the "forensic interviews" conducted in this case are testimonial. To the extent that he is referring to the interview and exam conducted by Tracy Miller and Dr. Crawford respectively, we have already discussed why any error that possibly occurred here was harmless. Due to additional evidence presented in this case and the lack of

10

clarity in Callahan's confrontation argument, any error that possibly occurred here was also harmless beyond a reasonable doubt.

## Inadmissible Evidence

For his next argument, Callahan complains that the trial court erroneously admitted improper evidence of prior crimes or bad acts. KRE 404(b). Evidence of prior crimes or bad acts must be relevant "for some purpose other than to prove the criminal disposition of the accused . . . ." *Meece v. Commonwealth*, 348 S.W.3d 627, 662 (Ky. 2011). Evidence admissible under KRE 404(b) must also be relevant, probative, and not unduly prejudicial. *Bell v. Commonwealth*, 875 S.W.2d 882, 889-91 (Ky. 1994). *See also* KRE 401; 402; and 403. Callahan failed to raise these issues before the trial court. Therefore, we will review for palpable error. RCr 10.26.

First, Callahan claims that the trial court erroneously admitted portions of Alice's recorded interview wherein she described several occasions where Callahan would beat Rebecca severely, and one occasion in particular, where Callahan beat Rebecca so badly that she was "practically dead" and that an ambulance was called. This evidence was indicative to Callahan's plan or common scheme of creating an environment of constant fear and physical intimidation, as previously discussed concerning the issue of forcible compulsion. This testimony was also relevant, probative, and not unduly prejudicial. *Bell*, 875 S.W.2d at 889-91. As previously discussed, Alice recanted her previous recorded statements to the police when she testified at trial. Therefore, introducing her prior statements was relevant to whether Alice

11

had reason to fear Callahan. *Wilson v. Commonwealth*, 438 S.W.3d 345, 349 (Ky. 2014) ("if a witness has reason to fear someone about whom the witness is testifying, evidence of that fear is admissible for impeachment purposes.") It is also critical to note that Callahan candidly admitted that he was imprisoned for approximately two years for beating Rebecca.

Alice also testified concerning Callahan's physical abuse of her and her siblings. She specifically testified that on one occasion, Callahan became upset at her brother, Jerry, Jr., and began throwing things at the children. This is permissible evidence under KRE 404(b) for the same reasons discussed in the preceding paragraph. Moreover, there was no way these alleged errors were palpable. The jury heard uncontested evidence that Callahan physically abused Rebecca and the victims immediately prior to and while he was raping the victims.

## Bolstering and Impeachment

For his next argument, Callahan contests the introduction of Rebecca Garrison's testimony. This issue is preserved and we will review for an abuse of discretion. Ms. Garrison is employed by the Children's Advocacy Center. Her testimony was limited to information contained in family court records indicating when the victims were removed from the Callahan home by government officials. The date of removal was November 30, 2006. That is the date that appeared in the jury instructions on each count. More specifically, the jury was required under the instructions to find guilt only if they determined that the crimes occurred "on or about a period of time prior to

12

November 30, 2006[.]" Therefore, Ms. Garrison's testimony was introduced for the proper purpose of providing a timeline in a case in which timing is certainly an issue. This was not bolstering.

Next, Callahan takes issue with testimony from two other social workers who generally commented on the victims' removal from the Callahan home and subsequent relocation to various institutions. He also contests the testimony of Donna Callahan, his sister-in-law. Callahan does not develop his argument here other than citing to portions of these witnesses' testimony wherein they discussed the victims' removal. He also fails to indicate whether these alleged errors were preserved. In any event, there was no bolstering here.

Callahan further complains of additional instances of improper bolstering and that the Commonwealth improperly impeached himself and the victims. These issues are unpreserved and Callahan requests palpable error review. First, Callahan takes issue with questions posed by the Commonwealth concerning Christy and Alice's removal from the Callahan home. The record indicates that the Commonwealth elicited information concerning a timeline of Christy's removal from the Callahan home and her subsequent placements prior to her emancipation. The Commonwealth's line of questioning here was proper. Also, since Christy's trial testimony recanted her previous statements, the Commonwealth's cross-examination concerning her previous statements to social workers was proper impeachment, not bolstering. It was also proper for eliciting substantive evidence through the prior inconsistent statements. *Jett,* 436 S.W.2d at 792.

13

Alice also testified that she had limited experiences with social workers and that the social worker and therapist who interviewed her used fear and confusion to force her to fabricate allegations. The Commonwealth properly impeached Alice's credibility by inquiring into her placements and numerous experiences with social services. There was no error here, and certainly no palpable error.

Callahan further complains that he was improperly impeached with evidence that he neglected his children. During his trial testimony, Callahan stated that he was not sure why the children were removed from his home. The Commonwealth cross-examined him concerning the social services records indicating that the children were removed for various reasons including medical neglect and unsanitary conditions. Callahan continued to claim that he was not aware of such allegations. The Commonwealth's questioning constitutes proper impeachment evidence.

## Impermissible Protocol Evidence

Callahan now argues that the investigating detective and other investigators including a social worker and a forensic interviewer impermissibly testified concerning investigation "protocol." He specifically contends that this testimony was irrelevant and constituted bolstering. This issue is unpreserved.

Most of the contested testimony cited by Callahan describes the process by which investigators typically proceed in a child sex abuse case. This type of evidence is generally relevant in any child sex abuse case, and certainly here, where Callahan directly challenged the thoroughness of the investigation.

14

During his direct examination for example, Callahan testified that he believed he had been wrongfully singled out by investigators who were pushing him to admit to something that he did not do. Defense counsel also attacked the thoroughness of the Commonwealth's investigation during closing argument and specifically argued that the investigators failed to pursue other individuals named by the victims. Therefore, there was no error here in admitting testimony concerning the investigatory process, and certainly no palpable error.

## Rebecca's Guilty Plea

While cross-examining Alice, the Commonwealth stated that Rebecca had pled guilty to one of the charges in the indictment. Callahan argues that this reference to Rebecca's guilty plea constitutes palpable error. However, the record indicates that the guilty plea was used by the Commonwealth to impeach Alice's testimony wherein she denied that Callahan sexually abused her or her siblings, and that Rebecca's prior statements to the police were false. This is a proper use of guilty plea evidence. *Cf. Parido v. Commonwealth*, 547 S.W.2d 125, 127 (Ky. 1977) (observing that evidence of a co-indictee's guilty plea is admissible if the co-indictee's credibility is at issue). Furthermore, defense counsel referenced Rebecca's guilty plea when cross-examining Rebecca, which occurred prior to Alice's testimony. Therefore, he opened the door to admitting this evidence. There was no error here, certainly no palpable error.

## Prosecutorial Misconduct

Lastly, Callahan argues that the prosecutor engaged in flagrant misconduct when cross-examining Alice. This issue is unpreserved. As previously noted, Alice's trial testimony recanted her prior statements alleging sexual abuse. During cross-examination, the prosecutor, while referring to Rebecca, asked "why would anyone lie about this sort of stuff?" He then repeatedly discussed the severity of the crimes at issue and also stated that "I don't think [the social worker] told you anything to say. She's not trained to tell you what to say." The prosecutor continued to question Alice regarding her prior statements to social workers. During cross-examination, the prosecutor also cited Rebecca's police interview and indicated that Rebecca's statements did not sound like someone telling a lie. The Commonwealth's cross-examination, while vigorous, was not inappropriate. There was certainly no palpable error here.

## Conclusion

For the foregoing reasons, we hereby reverse the judgment of the Clay Circuit Court on the third-degree rape and sodomy convictions, and remand this case to the trial court to dismiss those convictions. We affirm the court's judgment on all other convictions.

All sitting. Minton, C.J.; Cunningham, Venters, and Wright, JJ., concur. Hughes, Keller, and Noble, JJ., concur in result only.

16

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Micah Brandon Roberts
Assistant Attorney General