**STATE of Utah, Plaintiff and Respondent,**

v.

**Bryant Alan JOLLEY, Defendant and Appellant.**

**No. 15192.**

Supreme Court of Utah.

Oct. 21, 1977.

Ronald R. Stanger, Provo, for defendant and appellant.

Robert B. Hansen, Atty. Gen., William W. Barrett, Asst. Atty. Gen., Salt Lake City, Noall T. Wootton, Utah County Atty., Provo, for plaintiff and respondent.

ELLETT, Chief Justice:

On March 3, 1977, appellant was tried by the court, sitting without a jury, and was convicted of theft, a Class A misdemeanor. He brings this appeal on the grounds that (1) the evidence was insufficient to establish a prima facie case of theft or to sustain the conviction; and (2) the appellant was not properly identified during the course of the trial.

The Secretary of the Eagle's lodge had reported money missing from the cash box; and as a result thereof, the police dusted the money with blue detection powder—a substance that is not readily apparent if dry but which turns blue and leaves a stain when it comes into contact with moisture of any kind. The police also recorded the serial numbers of all bills larger than $1.00 in denomination.

Approximately $180 was stolen from the cash box and at the lodge that evening, appellant bought drinks, paid for a New Year's ticket, and purchased a "fifty-fifty" ticket. The money he used to pay for the New Year's ticket was not mixed with other cash in the register but was put in a special cash box used only for New Year's Eve reservations. Appellant's hands had a blue stain on them, and when the money in the New Year's cash box was examined, it was discovered that a $20 bill had blue powder on it and its serial number matched that of one of the stolen bills. Appellant paid for his "fifty-fifty" ticket with a $1.00 bill and when the Secretary of the lodge wet the bill, it also turned blue. The following day, appellant purchased a drink at a public lounge and when the cocktail waitress took his money, she noticed that his hands and several items on the table where he was sitting were blue. Her hands also turned blue while she was making change for appellant. On the third day, appellant made a cash deposit to his personal account. The teller's hands turned blue and during the subsequent investigation she found appellant's deposit slip with blue fingerprints on it. Money discovered coming into the bank had blue powder on it, and the serial numbers matched those recorded at the Eagle's lodge. Appellant was arrested and tried for the theft of the money from Eagle's lodge.

■ The statute [1] defining the crime under which appellant was convicted reads as follows:

1. U.C.A., 1953, 76–6–404 (1977 pamphlet).

2. U.C.A., 1953, 76–6–402 (1977 pamphlet).

A person commits theft if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof.

This statute is further subject to the following presumption: [2]

Possession of property recently stolen, when no satisfactory explanation of such possession is made, shall be deemed prima facie evidence that the person in possession stole the property.

Appellant urges the Court to accept his interpretation that the statutory presumption requires that unless the State submits proof that no satisfactory explanation has been made, mere possession of stolen property alone is not enough to make out a prima facie case. The statute correctly read, however, states that mere possession *is* sufficient to establish a prima facie case of theft *unless* the possession of the stolen property is satisfactorily explained. This requires that the defendant must offer his explanation as to how he came into possession of stolen property; and upon that offer, the State has the burden of proving that the explanation was an unsatisfactory one. If the defendant fails to offer an explanation, or refuses to do so when asked, the State cannot be expected to go forward with proving that an explanation which does not exist would have been unsatisfactory *if* it had been offered. Such tortured construction of the statute leads to absurd consequences that the legislature could never have intended.

■ Appellant did attempt to explain how he got blue hands the night he was at the Eagle's lodge, but this is not the explanation the statute requires him to make. The statute requires an explanation of *why he was in possession of stolen property*. In *State v. Little* [3] at page 290, 296 P.2d at page 290, this Court stated:

"One who is found in the possession of stolen property is *bound to explain such possession in order to remove the effect of that fact as a circumstance*, to be

3. 5 Utah 2d 42, 296 P.2d 289 (1956).

considered with all other evidence, pointing to his guilt, and *if he gives a false account* of how he acquired that possession or, *having reasonable opportunity to show that his possession was honestly acquired, he refuses or fails to do so*, such conduct is a circumstance which might, with all other circumstances, be considered in determining whether or not the jury is convinced beyond a reasonable doubt of the defendant's guilt." [Emphasis added].

The explanation as to why appellant's hands turned blue was only peripheral to the explanation he was required to make under the statute. Appellant offered no testimony on the point that he was passing property identified by serial number as having been stolen from the lodge. His failure to do so, therefore, became a circumstance tending to show guilt, which, coupled with possession, is sufficient to establish a prima facie case.

The elements of the crime that needed to be proved were that appellant obtained or exercised unauthorized control over the property and that he had a purpose to deprive the owner thereof. Unauthorized control was demonstrated by the fact that appellant had the combination to the safe, but he had no authority to open it or to handle the funds of the lodge at any time; he had possession of and passed stolen money for several days. His intent to deprive the owner is manifest by the fact that he made a deposit to his personal bank account and used the money to make personal purchases. These acts and the attendant circumstances for the three days of activity are enough to meet the test previously adopted by this Court that intent can be *inferred* by the defendant's conduct and circumstances testified to by witnesses.[4]

While the evidence was wholly circumstantial, it was, nevertheless, legally sufficient. This Court will not review the evidence other than to determine its legal sufficiency, absent a clear showing that it could not reasonably support the conviction.[5]

The stolen money had been dusted with the detection powder and the serial numbers recorded. Appellant had access to the safe and the opportunity to open it. For three days, he was seen by people in several situations, passing cash whose serial numbers were identical to the serial numbers of the stolen money—and he always exhibited the tell-tale blue hands. The only people who also had blue hands were those people who had direct contact with the appellant and to whom he passed money—the bartender, the Secretary of the Eagle's lodge, the cocktail waitress, and the bank teller. Testimony given by the witnesses was consistent in the fact that appellant was the only person observed to have blue stains on his hands the night he was at the lodge.

It is difficult to conceive of the possibility that appellant could walk around for three days, leaving a blue trail behind him, and that these blue stains were caused by accidentally coming into contact with the dusted money over that three-day period. This stretches the imagination too far, especially in light of the testimony which showed that whenever the blue money turned up, there appellant was also, passing that money with his blue hands.

The evidence was sufficient to lead the trier of fact to believe that appellant was guilty beyond a reasonable doubt.

Appellant's claim that he was not properly identified is entirely without foundation. He was present throughout the trial, and the witnesses testified that they were personally acquainted with him, and each witness identified appellant as the person involved in the transaction being testified to. Appellant would have us believe that the constitutional protection afforded the accused by his right to be confronted by

---

4. *State v. Romero*, Utah, 554 P.2d 216 (1976); *State v. Kazda*, 15 Utah 2d 313, 392 P.2d 486 (1964).

5. *State v. Mills*, Utah, 530 P.2d 1272 (1975); *State v. Allgood*, 28 Utah 2d 119, 499 P.2d 269 (1972); *State v. Romero, supra*.

his witnesses[6] requires that each witness point a finger at him and say, "He's the one." That is not so. Article 1, Section 12 of the Utah Constitution merely means that the accused may see the witnesses in order to make any objections he may have, and to exercise the opportunity to cross-examine them. The United States Supreme Court has consistently held that the constitutional clause is satisfied if there is an adequate opportunity for cross-examination, even in the *absence* of physical confrontation.[7]

The judgment of the trial court is affirmed. No costs are awarded.

CROCKETT, MAUGHAN, WILKINS and HALL, JJ., concur.

---

**6.** Constitution of Utah, art. I, § 12.

**7.** *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895).