**Fred RICE, Petitioner-Appellant,**

v.

**Ronald C. MARSHALL, Respondent-Appellee.**

**No. 81–3268.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1982.

Decided June 20, 1983.

Rehearing and Rehearing En Banc Denied Sept. 19, 1983.

Robert S. Catz (court-appointed), College of Law, Cleveland State University, Cleveland, Ohio, for petitioner-appellant.

Lianne L. Santellani, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee.

Before EDWARDS, Chief Judge, JONES, Circuit Judge and PECK, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Chief Judge.

Fred Rice appeals from dismissal of his petition for a writ of habeas corpus. He stands convicted of aggravated murder after a jury trial in Licking County, Ohio, and has been sentenced to a life term. He has exhausted appeals on the issues presented here in both the Ohio Court of Appeals and the Supreme Court of Ohio.

Among the undisputed facts of this case are the following. The body of a young

man, John Silverwood, was found in the early morning of June 25, 1978 on the shore of Lake Otto in Licking County, with arms tied behind his back, and head underwater. On examination the body was found to have three bullet holes and numerous signs of physical abuse.

The preceding night and early morning there had been a party of the Fugueros motorcycle gang on the Bowen farm in Licking County. There was undisputed testimony that at the party Silverwood, a "prospect" for membership in the gang, was beaten, burned, sodomized and ordered to perform oral sex. The degree to which he submitted willingly as opposed to being compelled to participate was at issue.

The life sentence from which this habeas corpus action resulted was entered after Rice's second trial—his first trial having resulted in a hung jury. Prior to these proceedings two of the leaders of the Fugueros gang had been convicted of murder in connection with Silverwood's death. They are Roger Collins, known in the Fugueros as "Wild Man" and David Noble, known as "Weasel." As to Fred Rice the appellant, his Fugueros pseudonym was "Halftrack."

The government's chief witness was Eric Holmquist (Goose) who had himself played an important role in the abuse of Silverwood which included tieing him up and putting him in the back compartment of Collins' station wagon for the ride from which he never returned. Holmquist testified under a favorable plea agreement offered by the prosecution in exchange for his testimony. His testimony, however, was vivid and very detailed.

Among other things, he testified that appellant Rice was known as the "enforcer" for the gang; that Rice had sodomized Silverwood in the midst of the gang, that he had seen Roger Collins, David Noble and appellant Rice enter the station wagon and drive off with Silverwood tied up on the floor of the rear compartment and that he had sometime later seen them walking back into camp from the same car. He also testified that Collins had told him after the fatal ride that their instructions had been to kill Silverwood and that later appellant Rice warned him never to talk about Silverwood again.

There was testimony from a forensic scientist concerning physical evidence matching samples of Silverwood's hair and hemp rope fibers taken from the body with hair and fibers found on the floor of Collins' station wagon.

Additionally, the prosecution offered as a witness a deputy sheriff who testified that while on patrol the night of the murder at 5:30 a.m., he saw a station wagon with three occupants visible in it travelling without lights and was about to stop it when the lights came on. The location was on a road which could have been used to travel from the Bowen farm to the murder site and back.

A firearms expert testified that the bullets which had been found in or below Silverwood's body came from a .38 caliber or .357 magnum pistol but were not fired from the .38 caliber derringer which Rice had been seen with that night.

The testimony we have summarized above, of course, constituted support for the jury's guilty verdict concerning appellant. Rice, however, testifying in his own defense, said that he had been at the Bowen farm, admitted abusing Silverwood (but asserting his assent), admitted helping load him into the station wagon, but denied that he had gone on the fatal ride.

We turn now to consider the only significant appellate issue presented; namely, that the reading, by questions before the jury, concerning still another gang member's prior police statement strongly implicating appellant Rice in the murder, was error which requires yet another trial of this case. This witness was named Allen Stone (Dum Dum). Although he had apparently talked freely to the police at his arrest, he was visited by two "investigators" for Rice and refused to answer any questions before the jury. He said he refused because of concern for "my health." He asserted that he had made up his mind

not to testify before the "investigators" came to see him in jail.

■ In general, a witness' out-of-court statement may not be admitted in a criminal trial absent the witness being available at the trial for both confrontation and cross examination. In addition it is clear that a witness is not "available" for cross examination when that witness refuses to testify. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

■ Stone's refusal to testify before the jury is clear and absent some exception or exceptions to the general rule, the procedure by which the jury learned about his statement to the police might require our finding abuse of appellant's rights under the confrontation clause.

■ There are, however, well recognized exceptions to this rule. One exception is where it is found that the defendant has occasioned the witness' silence by threat of violence coupled with the existence of "other strong indices of reliability surrounding the evidence." *See Mayes v. Sowders,* 621 F.2d 850, 855 (6th Cir.1980); *Tolbert v. Jago,* 607 F.2d 753 (6th Cir.1979); *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

In this case we believe that both requirements for the above exception to the general rule are present. In *Mayes v. Sowders, supra,* this court said:

> A witness is not available for full and effective cross-examination when he or she refuses to testify. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). This is equally true whether the refusal to testify is predicated on privilege or is punishable as contempt; *so long as the refusal to testify is not procured by the defendant. Douglas v. Alabama, supra,* 380 U.S. at 420, 85 S.Ct. at 1077; *Motes v. United States,* 178 U.S. 458, 471, 20 S.Ct. 993, 998, 44 L.Ed. 1150 (1900); *United States v. Mayes,* 512 F.2d 637,

650–52 (6th Cir.), *cert. den.* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). (Emphasis added)

621 F.2d at 856.

In *Ohio v. Roberts, supra,* the Supreme Court in regard to the "adequate indicia of reliability" element stated:

> When a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate indicia of reliability. Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. 448 U.S. at 66, 100 S.Ct. at 2539.

There is no doubt but that *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965) is the leading case on interpretation of the confrontation clause. Appellant relies upon its holding:

> Petitioner's inability to cross-examine the alleged accomplice about the purported confession, the prosecutor's reading of which may well have been treated by the jury as substantial and cogent evidence of guilt, denied petitioner the right of cross-examination secured by the Confrontation Clause of the Sixth Amendment which is made applicable to the States by the Fourteenth. . . .

*Id.*

Both before and after *Douglas,* however, the Supreme Court of the United States has recognized exceptions to the general rule of *Douglas.*

In 1878 the U.S. Supreme Court in *Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1978) recognized that the confrontation clause did not protect a defendant from the consequences of successful intimidation of a witness:

> The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his own

wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege. If, therefore, when absent by his procurement, their evidence is supplied in some lawful way, he is in no condition to assert that his constitutional rights have been violated.

98 U.S. at 158.

In *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court held:

The Confrontation Clause of the Sixth Amendment, as made applicable to the States by the Fourteenth Amendment, is not violated by admitting a declarant's out-of-court statements as long as he is testifying as a witness at trial and is subject to full cross-examination. The purposes of the Amendment are satisfied at the time of trial, even if not before, since the witness is under oath, is subject to cross-examination, and his demeanor can be observed by the trier of fact.

Even in the absence of an opportunity for full cross-examination at trial, the admission into evidence of the preliminary hearing testimony would not violate the Constitution. For the preliminary hearing in this case (where Porter was under oath, and where respondent was represented by counsel and had full opportunity for cross-examination) was not significantly different from an actual trial as far as the purposes of the Confrontation Clause are concerned, and it has long been held that admitting the prior trial testimony of an unavailable witness does not violate that clause. A different result should not follow where, as in this case, the witness was actually produced.

399 U.S. at 149, 90 S.Ct. at 1930 (Headnotes 1 & 2).

At Rice's trial the state trial judge questioned him about his reasons for refusing to testify after he had been offered immunity. That colloquy follows:

THE COURT: Were you subsequently talked to by any other parties not incarcerated in the institution where you are about testifying in this case?

A Yes, sir.

THE COURT: Who talked to you after Thursday of last week about testifying in this case?

A Two private investigators.

THE COURT: From what office? Who did they say they represented?

A Fred Rice.

THE COURT: They said they represented Fred Rice. Where were they from?

A Columbus.

THE COURT: Do you know their names?

A No, sir, I don't.

THE COURT: Was it after you had talked with them that you decided not to testify in this case?

A It was before then.

THE COURT: When did you talk to them?

A About five hours after the prosecutors left.

THE COURT: Within five hours you changed your mind?

A That is right.

THE COURT: Before you ever talked to them?

A That is right.

THE COURT: What caused you to change your mind?

A I just decided that my life means more to me.

THE COURT: In other words, your refusal to testify here then is based upon the fact that you feel that if you do testify in this case that there will be an attempt made on your life while you are incarcerated, is that right?

A Yes, sir.

THE COURT: That is your reason for refusing to testify?

A  Yes, sir.

Record at 572–74, *Rice.*

In the first appeal of our instant case to the Ohio Court of Appeals, that court held that witness Stone had been intimidated into silence by appellant "or his functionaries." *State v. Rice,* CA–2624 (Ohio Ct.App. No. 16, 1979). Distinguishing this case from *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), the Court of Appeals said:

> In our case, the reason for Stone's sudden reluctance to testify is clear, i.e., fear for his life at the hands of Rice, the "national enforcer" or his functionaries. From the record we find it was reasonable for the trial court to conclude that the appellant had intimidated the witness into silence. Citing *United States v. Mays [Mayes]*, 512 F.2d 37, 65 [637, 650] (6th Cir.1975).

*State v. Rice,* CA–2624 (Ohio Ct.App. Nov. 16, 1979).

As to "strong indices of reliability surrounding the evidence," *Mayes v. Sowders,* 621 F.2d 850, 855 (6th Cir.1980), we hold also that such are present here. Not only did Stone give his statement to the police voluntarily he also read and signed the statement after it was typed. This, of course, happened outside of any judicial or semi-judicial forum. During this trial, however, at a session in court before the trial judge and while Stone was under oath and represented by counsel, the following colloquy between the trial judge and Stone occurred:

> THE COURT: Did you hear my question? Did you review a prior statement given to Sergeant Eisel—did you review that with the prosecutor's office, being Mr. Luther and Mr. Becker, with your attorney being present last week—did you or did you not?
>
> A  Yes, sir, I did.
>
> THE COURT: Did you at that point in time indicate in the presence of your attorney and Mr. Luther and Mr. Becker that that prior statement was true and correct? Answer the question either yes or no.

A  Yes, sir.

Record at 571–72, *Rice.*

We believe that it is obvious that the statement which was the subject of questioning of witness Stone before the jury was surrounded by very significant indicia of reliability.

The judgment of the District Court dismissing the writ of habeas corpus is affirmed.