STATE of Utah, Plaintiff and Respondent,

v.

George Edward LENABURG, Defendant and Appellant.

No. 860194.

Supreme Court of Utah.

Sept. 28, 1989.

James L. Shumate, Cedar City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

HOWE, Associate Chief Justice:

Defendant George Edward Lenaburg appeals his conviction of aggravated sexual abuse of a child, Utah Code Ann. § 76–5–404.1 (Supp.1986) (amended, Supp. 1989), a first degree felony.

Defendant shared a trailer home with James Hunting, Karen Pace, their infant son, and Pace's five-year-old daughter. On the evening of September 4, 1985, Hunting was away from the home. Karen Pace put her daughter to bed in the living room and then went to bed in her own room. Defendant went to bed in his room at the other end of the trailer. Sometime later, Pace was awakened by her daughter's screams. She testified that she saw defendant, holding a knife in the living room and her daughter, standing in the kitchen, "holding herself." Drops of blood were on the kitchen tile. Pace then went back to bed, because defendant told her she was having a bad dream. She took some medication before returning to bed. She testified that she was awakened again by her daughter's screams, and she ran to the living room and saw her daughter lying on the floor with her panties removed, her nightgown pulled up, and defendant kneeling over her. Defendant claimed he did not get up after going to bed that evening and presented evidence that Pace suffered from psychotic delusions.

On September 6, the child was examined by Evan Thorley, a physician's assistant. Dr. Paul Barney was present for the vaginal examination. Thorley found a recent tear, approximately two millimeters in length, in the vaginal synechia. He also found her hymen was not intact. The child was interviewed by Marjorie Schuldt of the Division of Family Services. A videotape of the interview was made following the

procedures outlined in Utah Code Ann. § 77–35–15.5(1) (Supp.1986) (amended, Supp.1989). Defendant was subsequently charged with sexual abuse, and a pretrial hearing on the admissibility of the tape was held on January 6, 1986. The trial court found that (1) the videotape fully conformed to the requirements of section 77–35–15.5(1); (2) the child was unavailable as a witness under section 77–35–15.5(1)(h) based on expert testimony that she would suffer serious mental and emotional strain if required to testify at trial; and (3) under the criteria listed in Utah Code Ann. § 76–5–411(2) (Supp.1986) (amended, Supp. 1989), the interests of justice would be served best by admission of the taped statements. The court also found that alternatively the tape qualified for admission under rules 803(24) and 804(b)(5) of the Utah Rules of Evidence.

The child was not present at the trial, and the videotape and the transcript of Schuldt's interview were admitted into evidence over defendant's objection. He called four witnesses who testified that he did not have a reputation for being a child abuser. Two of those witnesses testified that his reputation for truth and honesty was good. On cross-examination, the prosecution asked defendant's character witnesses if they would change their opinions if they knew of a circumstance where defendant had acted inappropriately with other young girls. Three of the witnesses stated that such an incident, if proved, may affect their opinions. On rebuttal, the prosecution called a witness who testified that defendant had acted inappropriately with her two young daughters some four and one-half years earlier at a holiday dinner.

Defendant objected to using specific instances of conduct to prove bad character. He also objected on the ground that the testimony should be excluded under rule 403 of the Utah Rules of Evidence. Defendant's objections were overruled, and the jury returned a verdict of guilty from which he now appeals.

Defendant first contends that admission of the videotape interview denied him the right to confront witnesses called against him as guaranteed by the sixth amendment to the United States Constitution and by article I, section 12 of the Utah Constitution. The denial of confrontation was raised in *State v. Brooks*, 638 P.2d 537 (Utah 1981) and in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In each case, a transcript of testimony given by a witness at a preliminary hearing was admitted into evidence at a subsequent trial. *Ohio v. Roberts*, 448 U.S. at 60, 100 S.Ct. at 2536, 65 L.Ed.2d at 604, and *State v. Brooks*, 638 P.2d at 538. Great emphasis was placed on the indicia of reliability inherent in such testimony and the opportunity the defendant had to face his accuser and to probe the testimony of the witness through cross-examination. The ability to probe the veracity of the testimony through cross-examination lies at the core of the right of confrontation. *See Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965); *State v. King*, 24 Utah 482, 486, 68 P. 418, 419 (1902).

The videotape in the instant case was made pursuant to subsection (1) of section 77–35–15.5, which authorizes the making of a visual and aural recording on film of a child victim's oral statement. The oral statement may be recorded prior to the filing of criminal charges as was done in the instant case. Attorneys for the parties may not be in the child's presence or question the child. The tape is admissible in evidence provided, inter alia, the requirements of subsection (h) are met:

> (h) The child is available to testify and to be cross-examined at trial, either in person or as provided by Subsection (2) or (3), or the court determines that the child is unavailable as a witness to testify at trial under the Utah Rules of Evidence. For purposes of this subsection "unavailable" includes a determination, based on medical or psychological evidence or expert testimony, that the child would suffer serious emotional or mental strain if required to testify at trial.

In *State v. Mannion*, 19 Utah 505, 57 P. 542 (1899), the defendant was convicted of

attempted rape of his six-year-old daughter. At trial, the child took the stand and said, "I am afraid to tell, because I am afraid of my papa." *Id.* at 508, 57 P. at 542. The trial judge then seated the defendant in the corner of the courtroom, some twenty-four feet from the witness, and had the witness turn her chair toward the jury so that she could not see him. The defendant contended on appeal that he was denied his right of confrontation guaranteed by article I, section 12 of the Utah Constitution because he could neither hear nor see the witness as she testified. This Court reversed his conviction, stating:

> Under the constitution and statutes of the state the accused had a right to be present at the trial, to be confronted by the witnesses against him, and to meet his accusers face to face. He also had the right to appear and defend against the accusation preferred against him in person and by counsel. He had the right, not only to examine the witnesses, but to see into the face of each witness while testifying against him, and to hear the testimony given upon the stand. He had the right to see and be seen, hear and be heard, under such reasonable regulations as the law established. By our constitution it is clearly made manifest that no man shall be tried and condemned in secret and unheard.

*State v. Mannion,* 19 Utah at 512–13, 57 P. at 544.

One justice of this Court concurred only in the result and expressed his opinion that the right of confrontation includes only that the witnesses for the prosecution are present at the trial, are examined in the presence and within the hearing of the accused and jury, and an opportunity is afforded the defendant for cross-examination. The justice opined that the right did not include that the defendant be permitted to sit immediately in front of the witness when such position would cause intimidation and prevent the eliciting of testimony. *Id.* at 517, 57 P. at 545.

Later cases have stressed the indispensibility of the right to cross-examine. In *State v. Nelson,* 725 P.2d 1353, 1356 (Utah 1986), we stated:

> The essence of the confrontation right is the opportunity to have the accusing witness in court and subject to cross-examination, so that bias and credibility can be evaluated by the finder of fact. *E.g., State v. Anderson,* 612 P.2d 778, 785 (Utah 1980). If the witness is physically present and subject to cross-examination, as occurred here, these values would seem to be satisfied. *See State v. Jolley,* 571 P.2d 582, 585–86 (Utah 1977); *State v. Mastropetre,* 400 A.2d 276, 281 (Conn. 1978).

In a recent decision of the United States Supreme Court, *Coy v. Iowa,* 487 U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), an Iowa statute was struck down as being in violation of the defendant's right of confrontation guaranteed by the sixth amendment of the Constitution of the United States. The statute allowed the placing of a screen between a child witness and the defendant so that the witness could not see the defendant at all, but the defendant could hear her and dimly see her through the screen. All members of the Court agreed that the right conferred by the confrontation clause was not absolute. A majority of the Court held that the screen which made impossible eye-to-eye contact between the defendant and the two child witnesses was violative of his right of confrontation, at least in the absence of any individualized finding that the witnesses needed special protection. *Id.* at ——, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. Two justices dissented, expressing that under the Court's earlier decision in *California v. Greene,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489, 497 (1970), the defendant was only entitled to have the witnesses' testimony given under oath and subject to unrestrictive cross-examination and to have the jury have the opportunity to observe the demeanor of the witnesses in making their statements, thus aiding the jury in assessing their credibility. *Id.* at ——, 108 S.Ct. at 2806, 101 L.Ed.2d at 870–71.

In the instant case, the State contends that the right of cross-examination was properly dispensed with because the child victim was found by the trial court to be "unavailable" as that term is defined by subsection 77–35–15.5(1)(h), quoted above. Utah Code Ann. § 76–5–411 makes a child victim's out-of-court statement admissible as evidence if the statement qualifies for admission under section 77–35–15.5(1), subject to a determination by the judge that the interest of justice will best be served by the admission. Utah Code Ann. §§ 77–35–15.5(1)(g), 76–5–411(2). In making that determination, the judge is required to consider the age and maturity of the child, the nature and duration of the abuse, the relationship to the offender, and the reliability of the assertion and of the child. This statutory requirement of reliability parallels the requirement of reliability laid down by us in *State v. Brooks*, 638 P.2d at 539, where we held, based on the United States Supreme Court decision in *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608, that hearsay was admissible if the witness were unavailable but his out-of-court statement bore indicia of reliability.

In the case at bar, the trial court found from expert opinion adduced at trial that the child was unavailable as a witness because she would suffer serious mental and emotional strain if required to retell anyone about the alleged incident of abuse. The court further determined that the interests of justice would be served by admission of the videotaped statement, which it found to be reliable. After giving due deference to the findings and conclusions of the trial court, we cannot agree that the child victim's statement can be viewed as reliable so as to qualify for admission without having been subjected to cross-examination. The videotape was made two days after the incident by Marjorie Schuldt, who was a protective services worker for the Utah Division of Family Services. After a lengthy lead into the subject, Mrs. Schuldt asked the child, "Oh, has George [defendant] ever touched you?" She replied, "He just took my panties off and he got some blood on them." When asked when that happened, she replied, "A long, long, long,

long time." She stated that her mother was there and she told George "to git." She stated that George had a gun "[a]nd he shoot hisself [sic] and he had blood all over." The child continued, "And that's what happened and he was just about to die, then along came fat Jenny." The child continued that George had a "monster hand"; that George then died but now he "turned back into mommy. But he still sleeps with a gun." Further on in the interview, the child stated that defendant was wearing a mask. The child then related that defendant lay on her and when asked what he did, she replied that he bit her with his mouth on her cheek and that he got blood on both of her legs with his hands.

The child's mother was a witness to the incident. However, she did not testify that defendant had a gun or wore a mask. Those statements by the child, along with her assertion that defendant had a monster hand and that he died and then turned back into her mother, coupled with the statement that the incident happened a long, long time ago, raise serious doubts in our minds as to the reliability of the child's statements. Although Mrs. Schuldt endeavored to explain what she thought the child meant by her fantasized statement, we are left with doubt as to the accuracy of the child's version of the incident. Taking the child's statement as a whole, we think that it fails the reliability test, and therefore, it was error for the trial court to have admitted it into evidence without affording defendant any right of cross-examination.

It follows that the tape was also inadmissible for the same reasons under rules 803(24) and 804(b)(5) of the Utah Rules of Evidence, which the trial court held formed a separate and independent basis for its admission. These rules require guarantees of trustworthiness which are lacking here, unlike in *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987), relied upon in the dissenting opinion.

We now proceed to examine whether the error was harmful. In analyzing errors, we are guided by the fundamental

principle that all the rules relating to the conduct of criminal trials are meant to provide a fair, reasonable and practical means of doing justice. *State v. Scandrett,* 24 Utah 2d at 207, 468 P.2d at 642. Where the error is one in which the fundamental fairness of the procedure by which the result is reached is drawn into question so as to cast doubt on the result, then reversal is warranted. *State v. Knight,* 734 P.2d 913, 919 (Utah 1987). In analyzing irregularities at trial, our test for harmless error focuses on whether the error undermines our confidence in the verdict. When we are convinced that the error did not impact the fairness of the proceeding so that there is not a "reasonable likelihood of a more favorable result" absent the error, we will not overturn the verdict of the jury. *State v. Fontana,* 680 P.2d 1042, 1048 (Utah 1984); *State v. Sandoval,* 590 P.2d 346, 347–48 (Utah), *cert. denied,* 442 U.S. 932, 99 S.Ct. 2865, 61 L.Ed.2d 300 (1979); *State v. Howard,* 544 P.2d 466, 468–69 (Utah 1975); *State v. Winkle,* 535 P.2d 82, 83 (Utah 1975); *State v. Oniskor,* 29 Utah 2d 395, 399, 510 P.2d 929, 932, *cert. denied,* 414 U.S. 861, 94 S.Ct. 78, 38 L.Ed.2d 112 (1973); *State v. Johnson,* 25 Utah 2d 160, 162, 478 P.2d 491, 492 (1970); *State v. Scandrett,* 24 Utah 2d 202, 207, 468 P.2d 639, 642 (1970).

Applying that analysis to the instant case, we cannot say that the error in admitting the videotape was harmless. The tape was the most damning evidence presented at trial. Since defendant could not cross-examine the child concerning her statements made therein, he had no means to explore the contradictory or confusing portions of her testimony. Without this opportunity, we cannot judge what cross-examination would have revealed or the light it would have cast on the remainder of the testimony. The testimony of the child's mother was weakened because of her history of psychotic delusions. We must therefore reverse and remand the case for a new trial.

■ Inasmuch as the case is to be retried, we briefly discuss defendant's contention that the trial court erred in allow-

ing the prosecution to present evidence of specific instances of conduct to rebut his character witnesses. Admissibility of character evidence is governed by rule 404 of the Utah Rules of Evidence, which states:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

Defendant can offer evidence of his character, which the State can rebut; however, rule 405 of the Utah Rules of Evidence governs how this is to be done.

(a) Reputation or opinion. ... [P]roof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) Specific instances of conduct. In cases in which character or a trait of character of a person is [an] essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Since evidence of character is not an essential element of sexual abuse of a child, *State v. Miller,* 709 P.2d 350, 354 (Utah 1985), proof cannot be made under subsection (b); proof must be made under subsection (a) by "testimony as to reputation or ... in the form of an opinion." The prosecution can inquire as to specific instances of conduct on cross-examination under subsection (a), but neither rule 405 nor rule 608 permits the prosecution to call witnesses in rebuttal to testify as to alleged specific instances of conduct of a defendant. "Bare, *unproven* allegations of 'complaints' of prior incidents of similar conduct have no relevancy to the issue of defendant's truthfulness or veracity." *State v. Goodliffe,* 578 P.2d 1288, 1290 (Utah 1978). The evidence offered by the prosecution was not admitted to prove "motive, opportunity, intent, preparation, plan, knowl-

edge, identity or absence of mistake or accident." Utah R.Evid. 404(b). It was not proper proof of character under rule 405 or proper impeachment under rule 608. There being no specific exception to allow it, the evidence should be excluded under the general proscription contained in rule 404 that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."

█ The trial court also stated that the testimony was "not within the ambit of rule 403." Even under circumstances where evidence of specific instances of conduct are allowed under the rules, the trial court should analyze this testimony under rule 403.[1] This type of testimony can be highly prejudicial and may tend to confuse the issues before the jury. A careful weighing of the relevance and probative value of such evidence should be made and a balance struck between the need for its introduction and the prejudicial effect the testimony may have before such evidence is received. *See State v. McClain*, 706 P.2d 603, 604-05 (Utah 1985); *State v. Forsyth*, 641 P.2d 1172, 1176-77 (Utah 1982) (Stewart, J., concurring).

Defendant's conviction is reversed, and the case is remanded for a new trial.

HALL, C.J., concurs.

ZIMMERMAN, Justice (concurring):

I concur in the opinion of Justice Howe. I write only to express my view on a point not reached by the majority—the correctness of the trial court's determination that the hearsay testimony could be admitted because the child witness was "not available to testify in court," as that term is used in section 76-5-411(1)(b) of the Code. I conclude that the evidence was not sufficient to demonstrate that the child was constitutionally "unavailable"; therefore, even if the hearsay evidence had been reliable, it should not have been admitted un-

der section 76-5-411(1) in lieu of in-person testimony by the child. *See State v. Webb*, 779 P.2d 1108, 1109-1113 & n. 6 (1989).

STEWART, J., concurs in the concurring opinion of ZIMMERMAN, J.

DURHAM, Justice (dissenting):

I dissent. I am convinced that focusing primarily on the language of Utah Code Ann. § 77-35-15.5, as the briefs in this case did and as the majority opinion has therefore done, obscures the important point that the testimony of child victims in abuse cases may adequately be treated by the Utah Rules of Evidence, promulgated by this Court. There may even exist a legitimate question regarding the legislature's power to determine evidentiary questions by statute in view of the revisions to article VIII of the Utah Constitution, effective July 1, 1985, including the following language in section 4:

> The supreme court shall adopt rules of procedure and evidence to be used in the courts of this state.... The legislature may amend the rules of procedure and evidence adopted by the supreme court upon a vote of two thirds of all members of both houses of the legislature.

That issue is not before us in this case, but its existence underscores the wisdom of considering the interface of this statute with evidentiary rules promulgated by the Court. I will respond briefly to the majority's statutory analysis, but will also address the questions raised under the Utah Rules of Evidence.

Section 77-35-15.5, in addition to protecting the child's mental and emotional well-being, also seeks to preserve and protect evidence that might otherwise be rendered unavailable, occasionally by the acts of the defendant himself. Child victims of sexual abuse are, as a group, often unwilling and confused witnesses. Testifying in court concerning past sexual abuse may contribute to the psychological trauma caused ini-

---

**1.** Rule 403 of the Utah Rules of Evidence states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

tially by the abuse and may lead to reluctance and ultimate inability to testify.

The judicial process itself may prevent the victim from testifying. Courts are designed by and for adults. According to some psychiatrists, the formalized courtroom atmosphere, which tends to encourage adults to testify truthfully, may intimidate the child, particularly a child already traumatized by the crime. Despite attempts by judges and attorneys to make accommodations for a child, the basic nature of the system is difficult to change. The fear of testifying in formalized surroundings is compounded when the victim sees the defendant again. Often the defendant threatens the child with harm if she ever tells anyone about the crime. The child, unaware that the defendant's threats can no longer be carried out, may change her testimony. Furthermore, testifying may be as psychologically damaging as the initial experience was. Consequently, on the advice of counselors or psychologists, parents often refuse to allow their child to testify; the abuser goes unpunished to avoid harming the child further.

The irony of this situation is obvious: a system, designed to bring the abuser to justice, in reality further abuses the victim. Additionally, the abuser often goes free because, without the child's testimony, the evidence is insufficient to convict him.

Note, *Videotaping the Testimony of an Abused Child: Necessary Protection for the Child or Unwarranted Compromise of the Defendant's Constitutional Rights?* 1986 Utah L.Rev. 461, 464–65 (citations omitted); *see also* Note, *A Comprehensive Approach to Child Hearsay Statements in Sex Abuse Cases*, 83 Colum.L.Rev. 1745, 1749–51 (Nov.1983). Use of unconventional, alternative means of obtaining child victims' testimony can permit courts to utilize evidence that might otherwise be totally unavailable or so confused as to be useless. Such use, when properly restricted to ensure reliability, is thus in the public interest. Statutes that allow children to testify without fear of either the defendant or the courtroom atmosphere create a method for preservation and admission of evidence from persons who are generally the only first-hand witnesses to this type of crime.

While the avoidance of added mental strain to the child would not alone be adequate to allow a limitation on the defendant's right to cross-examination, the desire to avoid causing a victim serious mental harm *plus* the preservation of testimony that might otherwise be unobtainable justifies some limits under some circumstances of a defendant's right to cross-examine victims. Those circumstances, I think, are very similar to circumstances under which other hearsay evidence is admitted pursuant to the rules of evidence.

The philosophy underlying Utah Rules of Evidence 803(24) and 804(b)(5) supports the view that section 77–35–15.5 may be constitutionally applied and that the videotaped testimony was properly admitted in this case. The trial judge specifically found that the victim's videotaped testimony could be admitted into evidence at trial under both of these rules, as well as under Utah Code Ann. § 77–35–15.5. I agree. Although the majority opinion treats section 77–35–15.5 as a separate and particularized exception to the ban on admission of hearsay, an examination of rules 803(24) and 804(b)(5) provides an established alternative method by which the admission of the videotape may be analyzed. The admission of the videotape did not contravene the hearsay rule as the majority opinion states, but was proper in light of existing exceptions to the rule. In my view, a proper treatment of section 77–35–15.5 is to view it as incorporating the "catchall" exceptions in the rules of evidence and applying them to prior videotaped testimony.

Both rule 803(24) and rule 804(b)(5) provide exceptions for evidence otherwise excluded because it falls within the ambit of hearsay. Rule 803(24) provides an exception for

[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the

statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

Rule 804(b)(5) is worded identically, but applies only when the declarant is unavailable, while rule 803(24) may be used to admit evidence regardless of whether the declarant is available.

These "catchall" exceptions to the hearsay rule were intended, and should be used, to prevent otherwise reliable evidence from being excluded from trial simply because it does not fit into one of the specific exceptions.

> In [the cases] decided prior to the adoption of the Federal Rules, the admissibility of hearsay evidence was resolved by assessing relevancy, need and reliability instead of insisting on compliance with a particular class exception. The same approach should be used in ruling on proffers made pursuant to Rule 803(24).

4 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 803(24)[01], at 803–372 to –373 (1988). This analysis also applies to proffers made under rule 804(b)(5), since the rules differ only in their requirements concerning the availability of the declarant. Although both rules could possibly provide a basis for the admission of hearsay (when the declarant is unavailable),

> Rule 804(b)(5) will conceivably be relied upon more than Rule 803(24) for only in circumstances where the guarantees of trustworthiness are inordinately high, or the evidence is of a kind where cross-examination would not enhance reliability, should hearsay evidence be admitted in an individual case pursuant to Rule 803(24) if the declarant is available and does not appear.

*Id.* at 804–173. In order to introduce evidence under either rule 803(24) or 804(b)(5) the trial court must make five findings: (1) that the statement has "circumstantial guarantees of trustworthiness" equivalent to those found in the other specific exceptions to the hearsay rule; (2) that the statement is "offered as evidence of a material fact"; (3) that the statement is "more probative on the point" than any other reasonably procured evidence; (4) that the admission of the statement is in accord with "the general purposes of [the] rules and the interests of justice"; and (5) that notice is given that the statement will be used at trial. In addition to these requirements, if the evidence is offered under rule 804(b)(5), the declarant must be shown to be unavailable. *See* Utah R.Evid. 803(24), 804(b)(5). I believe that all of these requirements were met in this case and that the videotaped testimony was properly admitted under either rule, as the declarant was "unavailable" for trial within the meaning of rule 804(b)(5).

I reach the conclusion that the victim was "unavailable" based on analysis independent of the definition of that term in Utah Code Ann. § 77–35–15.5(1)(h), although I believe that that section provides a method by which the unavailability of the child victim may be properly determined. Utah Rule of Evidence 804(a)(4) provides that a witness is unavailable when the witness "is unable to be present or to testify at the hearing because of death or *then existing* physical or *mental illness or infirmity*." (Emphasis added.) I believe that adequate evidence was introduced at trial from which the "mental infirmity" of this victim could be found.

At a pretrial hearing on defendant's motion to suppress the videotape, two expert witnesses testified concerning the mental trauma which the very young (five-year-old) victim had already suffered as a result of the assault and the further trauma which forcing her to retestify could create. The first expert who testified, Marjorie Schuldt, the social worker who conducted the videotaped interview with the victim, testified that forcing the victim to testify would "seriously impact" her. In answer to defense counsel's questions concerning the impact on the child if counsel were to question her "using my techniques and style," Schuldt testified, "I don't believe she wants to tell you about it." Schuldt also testified that "regardless of whether

the defendant was present or not, the child would still be severely impacted."

The second expert, Tony Loveless, also testified that in his opinion the victim would suffer serious emotional or mental stress if she were required to testify about the incident again. After testing and interviewing the victim, Loveless felt "at this time that it would be detrimental to her emotional welfare to have her relive that situation [the sexual abuse]." He stated:

> In the experiences that I've had, ... the rehashing or reliving of the negative experience causes them [victims of sexual abuse] to develop an attitude about themselves.... At this point, I believe that she's going through this healing process.... I think that if it were to dredge up again, that she would have a tougher time in dealing with it and getting over it.

Based upon these observations, it was Loveless's recommendation that the victim not be required to appear before the court and retell her account of the sexual abuse because of its adverse effect on her emotional recovery and health. This testimony supports a finding of "unavailability" under rule 804(a)(4).

A recognized exception to the right of confrontation of witnesses exists when the defendant himself has procured the "absence" of the witness. "One exception [to the right of confrontation] is where it is found that the defendant has occasioned the witness' silence by threat of violence coupled with the existence of 'other strong indices of reliability surrounding the evidence.'" *Rice v. Marshall*, 709 F.2d 1100, 1102 (6th Cir.1983) (quoting *Mayes v. Sowders*, 621 F.2d 850, 855 (6th Cir.1980)). The court also noted:

> In [1878] the U.S. Supreme Court in *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 ([1978]) recognized that the confrontation clause did not protect a defendant from the consequences of successful intimidation of a witness:
>
> "The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by his wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away. The Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts. It grants him the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege."

*Rice*, 709 F.2d at 1102–03 (quoting *Reynolds*, 98 U.S. at 158).

In *Rice*, the defendant's associates threatened the witness in order to keep him from testifying at trial. The trial court found that this satisfied the exception and that "indices of reliability" surrounded the evidence; therefore, evidence of a statement that the witness had previously made to police was admitted at trial despite the lack of an opportunity for the defendant to cross-examine the witness.

In *United States v. Carlson*, 547 F.2d 1346 (8th Cir.1976), the Eighth Circuit Court of Appeals stated:

> The Sixth Amendment does not stand as a shield to protect the accused from his own misconduct or chicanery.... 'A defendant who murders a witness ought not be permitted to invoke the right of confrontation to prohibit the use of his accusation.' Graham, "The Right of Confrontation and the Hearsay Rule: Sir Walter Raleigh Loses Another One," 8 Crim.L.Bull. 99, 139 (1972). Similarly, a defendant should not be afforded the protection of the confrontation clause if he achieves his objective of silencing a witness by less drastic, but equally effective means. [The defendant] would have been able to confront [the witness] had he not taken steps to assure [the witness's] "unavailability" at trial.

*Id.* at 1359. The court determined that public policy considerations weighed in favor of finding that an accused waived his right to confrontation when his actions had caused the inability to confront the witness at trial. "To permit the defendant to profit from such conduct would be contrary to public policy, common sense and the under-

lying purpose of the confrontation clause."
*Id.*

I believe that the same policy issues and analysis may apply in some cases where the prior videotaped testimony of child victims of sexual abuse is sought to be admitted at trial in place of the child's presence and live testimony, assuming there are sufficient indicia of reliability. The victim's unavailability (even absolute inability in some cases) to testify is sometimes a direct result of the shame, humiliation, and severe psychic and physical trauma that sexual assault and exploitation cause in young children. Some children are so damaged by their experiences that they are literally unable to recount them in a public setting to strangers. The mental trauma of the initial act or acts of sexual abuse creates the child victim's inability or unwillingness to testify. Although in some cases the defendant may overtly keep the child from testifying by threatening him or her, in most cases the inability of the witness to testify is more subtly associated with the defendant. The abuse alone is often enough to traumatize the child, and the recounting of the abuse or the reconfrontation of the defendant may be so emotionally disturbing as to keep the child from testifying at all. Thus, it may be that the defendant's criminal conduct not only emotionally harms the child, but also in some cases assures that the evidence of the crime will never come to light in the courtroom. The defendant in such cases has successfully silenced the witness, just as surely as if outright threats were used. Of course, the determination of whether this is in fact the case will be a factual one and will be dependent on such things as the child's age, the violence and pain associated with the assault, and the child's own temperament and psychological disposition. Trial judges should not readily accede to protestations of inability to testify. They should thoroughly investigate and test

such assertions. But they should not be precluded from determining that a child witness is legitimately unavailable by reason of emotional or mental illness or infirmity, as I believe the majority opinion suggests.

I also disagree with the majority opinion's conclusion that the remaining requirements for admission under rule 804(b)(5) were not met. It is clear that the testimony was offered as evidence of a material fact. It is also clear that it was more probative on the point for which it was offered than any other evidence which could have been procured because the victim was the sole first-hand witness of defendant's acts. It is less clear that the admission of the tape was in the interests of justice and that it demonstrated "circumstantial guarantees of trustworthiness." However, upon balance, I believe that the videotaped testimony met both of these requirements.

Although some of the responses given by the victim in her videotaped interview may have needed explanation or clarification, as the majority opinion observes, the testimony was on the whole consistent with the fluency and articulateness of any five-year-old. It was in all contextual ways reliable. While some statements included in the interview may not seem wholly logical to an adult, their relevance and meaning were explained by the social worker who interviewed the victim.[1] The technical trustworthiness of the videotaped testimony was assured by the fulfillment of the requirements of Utah Code Ann. § 77–35–15.5(1)(a) through (g). After hearing the testimony of the two experts and reviewing the videotape, the trial judge found that there were "sufficient indicia of reliability and guarantees of trustworthiness in the information set forth in the video tape to allow the admission of the video tape under Rules 803(24) and

---

1. In the hearing on the motion to suppress the videotape, Marjorie Schuldt, the social worker, testified that the statements made by the victim concerning defendant and a "monster hand" and "monster mask" were consistent with statements often made by child victims of sexual abuse. She also testified that it was not unusual for the victim to state that the abuse had happened "a long, long, long, long time" ago although the abuse in this case had occurred only two days earlier, as this demonstrated that the victim was trying to put the event behind her and forget about it.

804(b)(5) of the Utah Rules of Evidence...." The trial judge further stated:

> [T]he findings ... are based on the candor and forthrightness of the witness, the fact that she is intelligent, understands right from wrong and is able to distinguish the imaginary from that which is real, that the experiences the victim describes are outside the realm of experience of such a young child, that the language the child used has the ring of truth and is appropriate to a child of her age, that the child is too young to understand the reasons for or the results of the assault, the fact that the Defendant had the opportunity to commit the crime, and the inability of such a young child to tell a story such as she told without having been subjected to the experiences she described. This list is indicative of some of the observations made by the Court which would indicate trustworthiness and reliability.

Moreover, in addition to the trial judge's findings concerning the victim's demeanor and the content of her testimony, the physical evidence of abuse supports the reliability of the videotaped testimony. Corroboration of the events relayed by the victim was provided by medical evidence that the victim's vaginal synechia had recently been torn and by the testimony of the victim's mother. I believe that the trial judge was correct in concluding that the testimony was trustworthy and agree with his assessment of this factual issue.

Lastly, the admission of the evidence was in the interests of justice. Although the majority opinion concludes that it was not because there were alternative means by which the testimony could have been gathered which would have allowed defendant an opportunity to cross-examine the victim, I believe that the testimony of the expert witnesses in this case adequately supports the conclusion that the witness was unavailable to testify under any means. Based upon the assessments of the trauma likely to result from any retelling of the events surrounding the abuse, the admission of the videotape into evidence was in the interest of justice.

In *State v. Robinson,* 153 Ariz. 191, 735 P.2d 801 (1987), the Arizona Supreme Court examined the admission of hearsay statements in a child sexual abuse case. The court found that although the hearsay statute under which the statements were admitted was unconstitutional, the statements were properly admitted under rules 803(24) and 804(b)(5). The court determined that the victim's spontaneity, the consistency of her retellings, the extent of her knowledge about sexual acts, the corroboration of the testimony, and the lack of a motive for the victim to lie guaranteed the trustworthiness of the statements. *Id.* at 811–12. Additionally, and I think very logically, the court noted, "A young child's spontaneous statements about so unusual a *personal* experience, made soon after the event, are at least as reliable as the child's in-court testimony, given months later, after innumerable interviews and interrogations may have distorted the child's memory." *Id.* at 814. The court found that the ends of justice were served by admitting "this type of reliable, highly probative evidence." *Id.* at 812. The court concluded, "Fortunately, the rules of evidence, which have their origin in the common law, are flexible enough to meet the problem of child sexual abuse." *Id.* at 813. I believe that similar indicators of trustworthiness were present in the victim's testimony in this case and that the admission of her testimony was in the interest of justice.

"In the absence of clear error, we uphold a trial judge's factual assessment underlying a decision to grant or deny a suppression motion." *State v. Branch,* 743 P.2d 1187, 1189 (Utah 1987); *see also State v. Bullock,* 699 P.2d 753, 755 (Utah 1985). Based on the above analysis, I can find no "clear error" in the factual assessment underlying the trial judge's decision to deny the suppression motion pursuant to rules 803(24) and 804(b)(5).

I would therefore hold that the videotape was properly admitted into evidence. As noted earlier, at the pretrial hearing to determine whether the videotape could be admitted, two experts testified as to the child victim's "unavailability" as defined by section 77–35–15.5(1)(h). From this testi-

mony, the trial judge concluded that the videotape could be admitted into evidence at trial and that the victim was "unavailable" pursuant to section 77–35–15.5(1)(h) due to the fact that forcing her to testify would cause her serious emotional harm. The trial judge stated, "[The victim], if she were required to appear to testify in person at the trial, would suffer serious emotional or mental strain. Therefore, [the victim]' is unavailable as a witness in this case." Marjorie Schuldt also testified that the technical and procedural requirements of section 77–35–15.5(1)(a) through (g) were met. In light of the evidence that the victim would suffer seriously from testifying at trial, I believe that the requirements for inclusion of the videotape pursuant to section 77–35–15.5(1) were also met and that the trial judge ruled properly on this issue.

Lastly, the videotape was also properly admitted pursuant to the constitutional standard for the protection of the right to confrontation enunciated by the United States Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980), and adopted by this Court in *State v. Brooks*, 638 P.2d 537 (Utah 1981). In *Roberts*, the Court stated that evidence which denied the defendant the right to confront the declarant could be admitted without running afoul of the defendant's constitutional rights if the declarant was unavailable and the evidence was surrounded by sufficient "indicia of reliability." 448 U.S. at 66, 100 S.Ct. at 2539. I am persuaded that both of these requirements were met in this case, as discussed above, and the admission of the videotape therefore met constitutional requirements.

I agree with the majority opinion's analysis of the testimony concerning specific acts of defendant offered by the prosecution in rebuttal of defendant's character witnesses. Utah Rules of Evidence 404 and 405 allow this type of inquiry as rebuttal only on cross-examination of a defendant's character witnesses. Therefore, the testimony given by the prosecution's witness that defendant had looked down the shirts of two other young girls on a prior occasion was improperly admitted by the trial judge.

However, because I believe there was no error in the admission of the videotape, I would reach a different conclusion on the question of a new trial. When evidence has been improperly admitted, the trial court's judgment will be reversed on appeal only when there is a "reasonable likelihood" that a different result would have been reached had the evidence been excluded. *See State v. Knight*, 734 P.2d 913, 919–20 (Utah 1987). This Court has interpreted this standard as requiring reversal whenever the error erodes confidence in the jury's verdict. *Id.*

I believe that the error was harmless in this case. An instruction given to the jury clarified the purpose for which the rebuttal evidence was to be used. Instruction No. 23 states:

[O]ther evidence has been received by the Court ... to rebutt [sic] such evidence of good character and reputation of the defendant, George Edward Lenaburg, and for this purpose only. Stated another way, such evidence goes to rebutt [sic] the evidence of good character and reputation and for that limited purpose only and you must not consider it as any evidence as to the facts charged on the 4th or 5th day of September, 1985.

This jury instruction lessened any possible prejudicial effect the erroneous testimony may have had on the jury and also lessened the chance that the jury convicted defendant based on his past bad acts.

In addition to the cautionary jury instruction, there was medical evidence of abuse—the tear in the victim's vaginal synechia. The victim testified via videotape that while she was sleeping on the living room floor, defendant had taken her panties off, "touched" her on her "bottom," and had gotten blood on her legs. The victim's mother testified that she had been awakened by the victim's screams to find the victim on the floor with her panties off, her legs spread, and blood on the floor. Defendant was leaning over the victim examining her by the light of a lamp he had placed on the floor, and he had blood on his

little finger. The victim's mother also testified that the victim had been living with her grandmother since the night of the abuse because the victim was afraid of staying in the trailer home where the abuse had occurred. The presence of this evidence in the record, along with the remedial impact of the jury instruction, supports continued confidence in the jury's verdict. Therefore, I believe that the admission of the testimony was harmless, and I would affirm defendant's convictions.